## M. C. BRADY, Dist. Att'y, ex rel. *v.* W. W. HOWE.

1. POWER OF THE GOVERNOR TO APPOINT CHANCELLORS. — Chancellors shall be appointed in the same manner as the judges. Judges of the circuit court shall be appointed by the governor, with the advice and consent of the senate. The appointment by the governor, without the advice and consent of the senate, would not confer a right to the office. Where the constitution has provided a mode for filling vacancies in particular offices, that is the exclusive mode, and the legislature can prescribe no other. In county offices, the vacancy shall be filled by an election which shall be ordered by the board of supervisors. To fill a vacancy in the office of chancellor, the senate must share with the governor the duty and responsibility of the appointment. When the senate is in session, and the term of a chancellor is about to expire, and will expire by limitation before the next session of the senate, the governor should nominate a person to fill the vacancy and send his name to the senate for their concurrence; and if he fails to do so, he cannot make a valid appointment, to fill such vacancy in the vacation of the senate; that would be to limit and abridge the right of the senate to advise and consent to the appointment of the officer.

2. SAME — REMOVAL FROM OFFICE. — The governor has no authority to revoke an appointment, and treating that revocation as creating a vacancy, fill the office by the appointment of another person. The constitution does not intend that the executive appointee to a chancellorship is tenant of the office at the governor's sufferance, and is removable at his pleasure.

3. SAME — DE FACTO OFFICER. — C. was appointed chancellor in the vacation of the senate, to fill a vacancy caused by the expiration of a full term: *held*, that the appointment was void; but for the repose and quiet of society,

Syllabus.

he is constituted *de facto* chancellor, and imparted virtue and validity to his judicial acts. A *de facto* officer is competent to do whatever a *de jure* officer may do, this prevents a failure of justice and avoids confusion.

4. Same — Appointment of a Clerk. — It pertains to a chancellor to appoint a clerk, under certain circumstances, and when these circumstances exist, a *de facto* chancellor exerts the power with the same right that he may render a decree, or punish for contempt. The statute makes provisions for the chancellor to make an *ad interim* appointment of clerk until the office can be filled by an election, but it would be a palpable evasion of the constitution, if the board of supervisors should refrain from ordering an election to the end that such an appointee might enjoy the residue of the time of his predecessor. The legislature could not provide for the filling a vacancy that happens by casualty, otherwise than by an election. The statute does not authorize the chancellor to fill the office for the balance of the term; he can assign a person to discharge the duties of the office until an election can be held.

5. Same — Eligibility to Office — Persons Liable for Public Moneys Unaccounted for — Const., Art. 4, Sec. 16. — No person liable for public moneys unaccounted for shall be eligible to any office of profit or trust until he shall have accounted for and paid over the same. C., chancellor, appointed H. clerk of the chancery court of Panola county; a petition was filed against H. in the nature of *quo warranto*, alleging that he was liable for public moneys; that he did receive large sums of money as treasurer of Panola county, for which he has not accounted and paid over, but still is liable therefor. He insisted that the default must have been judicially ascertained and fixed before the liability accrues: *held*, that this was not essential; that the question of his liability for moneys unaccounted for can be inquired into as fully and as thoroughly in a proceeding in *quo warranto* as in any form of civil action, or as in the trial of an indictment. The ineligibility arises from the receipt, detention and failure to account for and pay over the money. It is not a permanent disability to hold office, but temporary, continuing so long as the public funds are unlawfully detained, and ceasing when paid over. The question was, did H. owe and detain unlawfully the money at the time he was appointed. If so, he was ineligible, not upon the conviction of the misdemeanor, and the proceeding in *quo warranto* is not to inquire into the misdemeanor, but into the rights of the respondent to continue in the office.

Error to the Circuit Court of Panola County. Hon. E. S. Fisher, Judge.

This was an information in the nature of *quo warranto*, filed by M. C. Brady, district attorney, against William W. Howe, to inquire by what authority he holds and uses the office of clerk of the chancery court and clerk of the board of supervisors of Panola county.

The information assigns two grounds why defendant does not lawfully hold said offices, to-wit: 1. That the defendant was never legally elected or appointed to the said offices; and, 2. That said defendant, while treasurer of Panola county, during the years 1872 and 1873, unlawfully retained to his own use and for his own benefit, large sums of public money, which said sums the said defendant never accounted for or paid over, but is still liable for.   To the first assignment, the defendant filed an answer, to the second he demurred, upon the ground that the information did not disclose that there was any judgment by a court of competent jurisdiction against him for said public moneys, which demurrer the court below sustained.

The answer to the second assignment, sets up the fact that there was a vacancy in the office of chancery clerk of Panola county, caused by the death of the late incumbent; and that said W. W. Howe was appointed to fill said vacancy, by Hon. J. N. Campbell, chancellor, and had been commissioned by the governor, and given bond and qualified according to law.   To this answer, the district attorney demurred upon the ground that said chancellor had no constitutional power to make such appointment.   This demurrer was overruled, and the district attorney replied to the answer, setting up the fact that said J. N. Campbell was not chancellor, nor acting as such at the time he appointed said W. W. Howe, clerk; but that J. F. Simmons was the legally qualified and acting chancellor of said district at the time of said appointment.

The case was finally tried upon the issue of fact thus made, upon an agreed state of facts, to-wit:

On July 17, 1874, there being a vacancy in the office of

39

chancellor, Lieut. Governor Davis (acting governor) re-appointed Simmons chancellor; Simmons accepted and qualified, took leave of absence and returned to the state about the 10th day of October. During his absence, Governor Ames revoked his appointment, and about the time he returned to the state, Governor Ames appointed J. N. Campbell. Simmons never recognized the governor's power to revoke his appointment, but still claims to be chancellor. He did not hold the succeeding terms of the court for the reason that he understood that it was the opinion of the bar, that an attempt by him to hold the courts, would produce unnecessary litigation; but particularly for the reason that his resignation had been placed in the hands of a third party to be tendered to the governor upon the condition that the governor would withdraw his letter of revocation, and at the time the chancery court of Panola county should have been held, he did not know but what his resignation had been tendered to and accepted by the governor.

His letter of resignation was not returned to him until after Campbell had held the court at Panola. Campbell had held the various courts, up to the filing of the information. On November 15th, Campbell appointed Howe, the respondent, to the office of chancery clerk, and he immediately qualified, and has ever since been acting as such clerk. This appointment was made in vacation.

On this state of facts, the court below held the respondent *prima facie* entitled to the office and dismissed the information, to which the relator excepted, and now brings the case to this court, and assigns for error:

1. The said circuit judge erred in sustaining the demurrer of respondent to the second count of the information.

2. The said circuit judge erred in refusing to render judgment of ouster against said respondent upon trial of the issue of facts made by the said information, the respondent's answer to the first count thereof, and the replication of relator to said answer.

*R. H. Taylor & J. G. Hall*, for plaintiff in error:

The question presented by the first assignment of error, is whether or not it is essential to the maintenance of a *quo warranto*, under sec. 16, art. 4 of the constitution, that there should be an adjudication against the respondent for the recovery of the public funds for which he is alleged to be liable. The only thing required to render a person ineligible under this clause, is that the person shall be "liable for public moneys unaccounted for." If this liability exists before as well as after a judgment, then respondent is brought clearly within the terms of the constitution and was ineligible from the moment he wrongfully detained public funds. Words in the constitution will be used in their usual and ordinary sense. Cooley Const. Lim., p. 58, 59, and cases cited. The legislature may, if deemed expedient, by law declare such withholding of public funds, a crime or a misdemeanor, and superadd pains and penalties. But whether this be done or not, cannot affect the internal force of the constitutional provision. Imbedded as it is in the very groundwork of the government, it works out its own ends without any extraneous aid, and is above any and all the branches of the state government. Green v. Robinson, 5 How., 80; Brien v. Williamson, 7 How., 14; Morgan v. Vance, 4 Bush., 323. It has been held that the constitution should not be so construed as to cripple the government. Cooper v. Moore, 44 Miss., 391. The second assignment of error presents a grave question, and must be considered in view of the admitted state of facts, all technical objections being waived by the acceptance of the issue and the trial upon those facts. If respondent is rightfully in office, that right must have been derived from a source competent to bestow the right, not only with all the *indicia*, but with every right belonging to an officer *de jure*. Refer to the facts in the case. The first point arising upon this state of facts, is the power of the governor to revoke an appointment once regularly made, and to appoint another person to the same office. Cited Rev. Code of 1871, § 106. Respondent must show by what war-

rant he holds his office, and he traces his title to that office through this *de facto* chancellor. He must then show the validity of his appointment. No presumption can be indulged in his favor, but he must show, in every respect, that he has been legally inducted into office, and still legally holds the same. The People v. Mayworm, 5 Mich 149; State v. Beecher, 15 Ohio, 723; People v. Phillips, 1 Denio, 388; State v. Harris, 3 Pike, 570; State v. Ashley, 1 Pike, 513.

*L. P. Cooper*, on the same side, filed an elaborate brief and argument, urging, substantially the same points, as his associate counsel, citing the following authorities: Const. of Miss., art. 5, sec. 17; Const. of Miss., art. 6, sec. 11, 17; Code of 1871, p. 33, § 106; Alcorn v. Shelby, 7 George, 273; 1st Ark. Rep'ts, 513; 3d Ark., 570; Newsom v. Cocke, 44 Miss., 352; Ex parte Henuaw, 13 Peters, 230; 13 Curtis, 135, and cases cited; 2 Bouvier Law Dic., p. 41, defines "liability;" Angell & Ames on Corp. (5 ed.), 832.

*Miller & Miller*, for defendant in error:

1. Has a chancellor in this state the power to fill, by appointment, a vacancy in the office of chancery clerk?

2. In a *quo warranto* proceeding against a chancery clerk who holds his office under an appointment from the chancellor, can the title of the chancellor to *his* office be inquired into?

3. In a *quo warranto* proceeding against one in possession and discharging the duties of a public office, upon the grounds of his "liability for public moneys unaccounted for," can there be a judgment of ouster until there has been first an adjudication fixing the liability in a court of competent jurisdiction?

The first question is answered by the Rev. Code of 1871, § 983, in the affirmative.

The second question is answered in the negative. Campbell was in the office, exercising the function of it. If Simmons had any claim to the office, he had abandoned it, as shown by the facts in the case. The power to appoint belongs to the governor. Const., art. 6, secs. 11, 17. The exercise of this power of

appointing to office, implies the exercise of discretion, prudence
and *deliberation*, and is not included by the spirit, scope and
object of the law within those "duties," conferred upon the
lieutenant governor by art. 5, sec. 17 of the constitution. But
Campbell, at all events, was chancellor *de facto* if not *de jure*, and
his appointment of defendant was as valid as all his other acts.
Code 1871, § 317. Be this as it may, his title to the office of
chancellor, and by virtue thereof his right to appoint, cannot be
collaterally questioned. Freeman on Judgment, § 148; Cooper
v. Moore, 44 Miss., 386; Commonwealth v. McComb, 56 Penn.
St., 436; Rice v. Commonwealth, 3 Bush. (Ky.), 14; 70 N. Car-
olina, 351; Moore v. The State, 5 Sneed, 510; Satterlee v. San
Francisco, 23 Cal., 314; Commonwealth v. Green, 58 Penn. St., 226.

The third ground, can an officer be removed upon the ground
of his *liability for public moneys unaccounted for*, unless there be
first an adjudication of his liability in another court, we answer in
the affirmative.

We further submit that in this proceeding, which is extremely
summary, may be had before the circuit judge in vacation, and
when carried to the supreme court, it may there be tried in vacation.

We submit further, that the defendant Howe, in this *quo war-
ranto* proceeding, could not have been a witness, and therefore
could not be heard to repel the evidence against him of liability;
and the trial of the cause is the same as in criminal prosecutions.
Rev. Code, 1871, § 1504.

*Powell & Johnston*, on the same side, filed an elaborate brief. It
is insisted:

1. That a chancellor has no legal authority under the constitu-
tion and laws of the state, to fill such vacancies. Const., art. 12,
sec. 7 provides, that in all cases not otherwise provided for in this
constitution, the legislature may determine the mode of filling
the vacancies in all offices.

Sec. 20, art. 4 of the constitution, provides that the board of
supervisors shall order all county elections to fill vacancies that

may occur in the offices of their respective counties. Revised Code 1871, § 983. Should the office of the clerk of the chancery court become vacant * * * the chancellor may appoint a clerk * * * until said officer is able to perform his duties, or until a successor is elected and qualified. There is no conflict between this section of the code, and art. 6, sec. 20 of the constitution. The article in the code supplies the means of filling the office during the term when the vacancy occurs, and the election and qualification of the successor under the orders of the board of supervisors.

2. It is insisted that J. N. Campbell was not chancellor; that his appointment to said office by Governor Ames was a nullity, because the vacancy had been filled by the appointment of J. F. Simmons.

It has been held by this court, that the power to appoint carried with it the power to remove. Cocke v. Newsom, 44 Miss., 352. He was in possession of the office, and was *de facto* chancellor. Blackburn v. The State, 3 Head, 691; Cooper v. Moore, 44 Miss., 386.

3. That appellee, W. W. Howe, was liable for public moneys unaccounted for. To this he demurs, because said information does not allege that said liability of defendant was adjudicated or established by a court of competent jurisdiction. The demurrer was sustained. See Const., art. 4, sec. 16.

SIMRALL, J., delivered the opinion of the court.

This was a proceeding by information in the nature of *quo warranto*, challenging the right of the respondent, William W. Howe, to the office of chancery clerk of Panola county, and *ex officio* clerk of the board of supervisors.

Two specific grounds are set forth in the information why the respondent does not legally hold the office.

First. That he was neither legally elected nor appointed thereto.

Second. That while treasurer of Panola county, during the

years 1872 and 1873, he unlawfully retained to his own use, and for his own benefit, large sums of money, to wit: $554.32 of the common county fund, and $1,605.63 of the school funds of the county, for which sums of money he is still liable, and has never accounted for and paid over, etc.

To the first assignment, the respondent filed an answer; to the second, he demurred.

In the answer, the respondent states that there was a vacancy in the office of chancery clerk * * * caused by the death of the incumbent John C. Harrison, who had been duly elected, and that respondent was appointed to the vacancy by Hon. J. N. Campbell, chancellor of the 10th district, on the 16th of November, 1874. Harrison was elected for four years, from the 1st of January, 1872; his term would have expired on the 1st of January, 1876. The term of Hon. J. F. Simmons, as chancellor, expired on the 3d of June, 1874. On the 17th of July, the same year, the office being vacant, the lieutenant governor (on account of the absence of the governor), acting as governor, reappointed Simmons, and issued to him a commission, which was received by Simmons on the 18th of July, who qualified according to law on the 20th of July, and notified the acting governor of his acceptance, and asked and obtained leave of absence until the 10th of of October, which was granted. Simmons left the state the 23d of July, and did not return until the 3d of October. In August, 1874, Governor Ames revoked the appointment of Simmons, and so notified him.

The regular term of the chancery courts in the district begun in Tallahatchie county the first Monday of October. The term in Panola county was the second Monday. J. N. Campbell presided at both terms.

It is said, first, that the appointment of Campbell is void, because there was no vacancy, the office having been already filled by Simmons, who was appointed by the lieutenant governor.

What is the constitutional mode of filling the office of chancel-

lor? Chancellors shall be appointed in the same manner as the "judges of the circuit court," art. 6, sec. 17.

Judges of the circuit court shall be appointed by the governor, with the advice and consent of the senate. Art. 6, sec. 11. The appointing power is placed in the governor and senate. The initiation, that is, the selection of the person is with the governor, but the appointment must be with the advice and consent of the senate. If there were no other provision on the subject, it would not be doubted that the appointment by the governor alone would not confer a right to the office.

" All vacancies not provided for in this constitution shall be filled in such manner as the legislature may prescribe." Art. 5, sec. 13. If, however, the constitution has provided a mode of filling vacancies in particular offices, that is the exclusive mode, and the legislature has no power to prescribe any other. To the same effect is sec. 7 of art. 12. " In all cases not otherwise provided for in this constitution, the legislature may determine the mode of filling all vacancies in all offices." The 21st section of art. 6 furnishes an instance where the constitution itself prescribes the manner of filling vacancies in county offices, viz.: the board of supervisors " shall order all county elections, to fill vacancies that may arise in the offices of their respective counties."

So also does the fifth section of sixth article: " All vacancies that may occur in (supreme court) from death, resignation or removal, shall be filled by appointment, as aforesaid ; *provided*, *however*, that if any vacancy shall occur during the recess of the legislature, the governor shall appoint a successor, who shall hold his office until the next meeting of the legislature."

' If the constitution is silent, the manner of filling vacancies is remitted to the legislature.

It is very manifest that the senate shares with the governor, in the duty and responsibility of filling the judicial offices of the higher courts, and, since the judges of the supreme, circuit and chancery courts, hold for a definite term, the constitution intends

that the appointments of the respective judges to their appropri-
ate terms of nine, six and four years, shall be participated in by
the senate. ' That purpose is carried out by section 106 of the
code (1871): " The governor shall fill, by appointment, with the
advice and consent of the senate, all- *offices* subject to such ap-
pointment under the *constitution* and laws, when the *term* of the
*incumbent* is *about* to *expire.*" He shall do this in advance of the
expiration of the term, so that the senate may, with him, do its
duty under the constitution, in advising and consenting to the
appointment. He must select such time, before the expiration of
the term, for making the appointment, as that he may obtain their
concurrence. The meaning is (since the senate only convenes
periodically, unless by extraordinary convocation of the legisla-
ture), the governor shall make his nomination to that body,
at a session immediately preceding the expiration of the term.
That satisfies the intent of the words "about to expire." The
idea is, that if the term of the judicial officer will come to an end
before the next regular session of the senate, then the nomination
shall be made to the body in session just before, or preceding such
ending of the term. That is necessary in order that the appoint-
ment to a full term may not be made without the consent of the
senate. The same idea is kept up (of requiring the concurrence
of the senate) in the other clauses of the statute. "And also by
the approval.of the senate, all such vacancies occurring from any
cause during the session of that body." Clearly the governor can-
not appoint to a vacancy which happens during the session of the
senate, without its concurrence unless, as provided in the last
clause of the section, it took place during the last five days of the
session; nor can he fill a vacancy caused by the refusal of the
senate " to confirm any appointment or nomination."

   Only when it is impracticable for the senate to unite with the
governor, does the constitution and statute intend that the gover-
nor alone can make an appointment. The statute regulates the
subject on that theory. First, if the office is *about* to be vacant by

expiration of the term, the governor must send his nomination to the senate for its advice and consent. The impending vacancy will occur at a time certain, and is in no manner contingent. Second, if the vacancy, from any cause, takes place during the session of the senate, an appointment must be made by the governor and senate, unless it is covered by the last clauses of the section. After these specific directions, the section contains these general words: "And he (the governor) shall also appoint for all vacancies occurring from any cause in such offices during the vacation of the senate, and also all other vacancies not otherwise filled by law." "But such appointments shall be reported to the senate within ten days, after the commencement of the session for their approval," etc.

The preceding clauses had provided for two specific cases, to wit: First, "when the term was about to expire." Second, all such vacancies occurring from any cause during the session of the senate "whether by the ending of the term, or from casualty of death, resignation," etc. After these specific directions, then follow the general words above quoted, introduced by the adverb "also," which are designed to meet all other instances of vacancies than those enumerated. After the constitution had declared that judges shall be appointed by the governor and senate, what other effect can the 13th section of the 5th article have, than to authorize the legislature to prescribe how a vacancy, which happens before the term is out, shall be filled. Certainly it was not designed to limit or abridge the full and complete right of the senate to participate with the governor in conferring the office.

The general clause in the statute may be paraphrased thus: Since vacancies occurring in certain defined circumstances shall be filled as herein specifically directed, and since vacancies may arise in the vacation of the senate from several causes, as death, resignation, or from whatever cause it was brought about, if it has not been specially provided for in the preceding parts of this statute, then the governor may appoint, etc. When the statute had al-

ready enacted that the governor, with the advice and consent of the senate, must fill a term about to expire; it would be unreasonable to construe the succeeding clause as partially repealing or modifying it, when the general language can have a full meaning and application, to a large class of vacancies brought about by contingencies.

Construing the 13th section of the 5th article as giving power to the legislature to regulate the filling of vacancies, whether arising from expiration of the term or from casualty, and giving to the several parts of the section 106 of the Code, such a rendering as will make it a harmonious unit; this rendering of the statute makes all the parts agree with each other, and conform to the letter and spirit of the constitution. First. A term of the chancellor, which will expire in the vacation of the senate, must be filled by a nomination by the governor to the senate, and a confirmation at the session preceding its termination. Second. Vacancies which arise from the ending of the term, or from casualty during the session of senate, must be *then* filled by the governor and senate, unless a vacancy (from contingent cause alone, perhaps), occurs during the last five days of the session. Third. If the senate refuses to confirm an appointment or nomination, the governor shall not fill such a vacancy in vacation, unless it happened within five days before the senate adjourned. But vacancies occurring in any other than these enumerated modes may be filled by appointment in vacation, which includes only such vacancies as happen in the recess of the senate, from casualty, as death, resignation, etc.

Since the constitution refers it to the legislature to regulate the filling of vacancies, where the constitution itself has not indicated a mode, it follows, that the appointing power must pursue the mode pointed out in the statute.

Was the appointment of the chancellor in the 10th district made in accordance with the constitution and statute? The term of Chancellor Simmons expired on the 2d of July, 1874. The

constitution, in words so plain that there is no room for construction, declares that chancellors, like circuit judges, shall be appointed by the governor, with the advice and consent of the senate. The statute regulating the subject so that there may be concurrent exercise of the power, enacts, in effect, that at the session of the senate just preceding the end of the term, the appointment of the successor shall be made by the governor and senate.

To have conformed to the law, the governor ought to have asked the advice and consent of the senate to an appointment, at their session next preceding the 2d of July, 1874, when the incumbent's term expired.

What was the effect of the respective appointments made by the lieutenant-governor and governor in vacation? Lieut. Governor Davis, during the absence of the governor from the state, and while he was discharging the executive functions, on the ———— day of July, 1874, appointed the Hon. J. F. Simmons, chancellor, the office being then *vacant.*

The 17th section of the 5th article is to the effect, " that when the office of governor shall become vacant by death or otherwise, the lieutenant governor shall possess the powers and discharge the duties of said office." * * " When the governor shall be absent from the state * * the lieutenant governor shall discharge the duties of said office * * until the governor be able to resume his duties." In the first named contingency, the office is absolutely devolved upon the lieutenant governor. In the second, the duties of the office are temporarily to be performed by the lieutenant governor. There is nothing in the language or in the reason for the provision, which would confer part of the *duties only* upon him. The words are " duties of the office." That is all of them. If there had been an enumeration of some of them, that would have excluded all others.

If, therefore, the governor could have legally made the appointment, in his absence from the state, the lieutenant governor could have done so. The incumbent's term ended the 3d June, 1874.

On the 17th of July, the office being vacant, Lieutenant Governor Davis appointed. His appointee immediately accepted and qualified. It hardly admits of doubt that, under the permanent provisions of the constitution, that when the governor fills an office by appointment, in vacation of the senate, his whole power over the office is exhausted. That idea runs through the opinion of the court in Newsom v. Cook, 44 Miss., 360 et sequiter. The statute authorizing the governor to remove at pleasure certain officers therein named, was sustained, because of the anomalous and peculiar provision of the 6th sec. of art. 12, which was temporary in its effect, and has long since ceased to have effect. The doctrine there admitted is, that after the several classes of officers provided for in the constitution have been lawfully inducted into office, either by election or appointment, they do not hold at the pleasure of the executive, and can only be removed in the manner prescribed by law. The same doctrine is announced in Marbury v. Madison, 1 Cranch, 161-3. It is said: "Some point of time must be taken when the power of the executive over an officer, not removable at will, ceases. That point of time must be when the constitutional power of appointment has been exercised." After a long and earnest struggle in Great Britain, the independence of the judges of the crown was secured. It has always been supposed that that result has been achieved on this continent, by making their terms of office during good behavior, or for a definite term; by giving them a fixed compensation, and declaring that they shall only be removed for good cause, after trial and conviction, or on address of two-thirds of the legislature. In no other than one of these modes could Chancellor Simmons, if rightfully in office, be removed, so long as he could legally hold the 'office. The statute, sec. 106, requires the governor to report to the senate " all such appointments, requiring their approval, within ten days after the commencement of the meeting of that body, for their advice and consent to the sppointment." The language implies that the appointment made in vacation

shall be submitted to the senate. If the governor has the consti-
tutional right to submit some other name to the senate than his
appointee in vacation, we are clearly of opinion that he cannot
remove such appointee and leave the office vacant, or to make
room for another person, so long as the senate has not concurred
with him in another appointment. The constitution has provided
the modes, and only modes, of removing a judge.

If an office is filled by a person invested with its functions, the
office is not vacant, and an appointment confers no right. Com-
monwealth v. Hanley, 9 Penn. St., 519. The law authorized the
incumbent of an elective office to hold until his successor was
duly elected and qualified. It was held, the governor could not
fill as for a vacancy, because the office is temporarily filled by a
person designated by law. People v. Tilton, 37 Cal., 624; People
v. Van Horn, 18 Wend., 518.

A constitutional officer cannot be divested of an office, except
in the manner provided for in the constitution. State v. McNeely,
24 La. Ann., 20; State v. Towne, 21 La. Ann., 490. Unless the
governor may at pleasure remove an officer, his appointment
when made is final. Ewing v. Thompson, 43 Penn. St., 372;
Weatherbee v. Caznean, 20 Cal., 507. We conclude, therefore,
that the governor had no authority to revoke the appointment
made by the lieutenant governor or himself; and treating that re-
vocation as treating a vacancy, fill the office by the appointment
of another person.

But as we have seen, neither the governor nor, in his absence,
the lieutenant governor, could rightfully make an appointment
for the 10th district.

It will follow, therefore, that the acceptance of a commission,
and the qualification of Mr. Simmons, did not invest him with
the office *de jure.*

The subsequent removal of Mr. Simmons by the governor, was
without warrant of law. If he had been legally appointed, the
power of the executive to fill the office was exhausted.

Manifestly, the constitution does not intend that the executive appointee to a chancellorship is tenant of the office at the governor's sufferance, and is removable at his pleasure.

The appointment of Mr. Campbell by Governor Ames, did not confer the office upon him legally and constitutionally.

But since Mr. Campbell, some time after his appointment, with the acquiescence of Mr. Simmons, entered upon the office, and discharged its functions; referring his claim so to do to the appointment and commission of the governor, he thereby became an officer *de facto*. He acted on a claim of right, and referred his possession and title to his appointment and commission..

That for the repose and quietude of society, constituted him *de facto* chancellor, and imparted virtue and validity to his judicial acts. In order that litigants and others who have an interest in his official doing, to prevent a failure of justice, to avoid confusion, it is the safe and prudent rule to treat him as a *de facto* officer. When the incumbent is in full, quiet fruition of the office, and has entered under color of right, the law clothes his acts with validity. "To constitute an officer *de facto*, there must be color of right by election or appointment, or an acquiescence by the public, for a length of time which would afford strong presumption of colorable right. Kimball et al. v. Alcorn et al., 45 Miss., 158.

Nor can a distinction be made between the acts of a *de facto* officer, assigning competence to some and incompetency to others. He is competent to do whatever the *de jure* officer may. Cooper v. Moore, 44 Miss., 392. It pertains to the chancellor to appoint a clerk in certain circumstances. When these circumstances exist, the *de facto* chancellor may exert the power with the same right that he may render a decree or punish for contempt.

What is the power of the chancellor to appoint a clerk? As we have seen, the mode prescribed in the constitution for filling vacancies in all county offices is by an election, which must be ordered by the board of supervisors. But since more or less time must elapse from the happening of a vacancy before the unex-

pired term can be filled by election, the Code, § 983, makes provision for that emergency, as well as " for the refusal or inability of the incumbent to perform the duties," by enabling the chancellor to make an *ad interim* appointment until the office can be filled by election and qualification, or until the incumbent who has been temporarily disabled, and refused to act, resumes his duties. Such appointee shall perform the duties of clerk * * whilst he continues in office. The chancellor, for this limited time, is authorized — that the business pertaining to the office may not be impeded — to designate and assign some person to the performance of its duties. It would be a palpable evasion of the constitution if the board of supervisors should refrain from ordering an election, to the end that such appointee might enjoy the residue of the term in case of the incumbent's death, resignation or removal. The legislature could not provide for filling a vacancy which had thus happened, otherwise than by an election. The statute does not authorize the chancellor to fill the office for the balance of the term. Its scope and purpose is, until that can be done by an election, he may assign some person to discharge the duties of clerk. We think that Campbell, as *de facto* chancellor, had the right to designate the respondent to act as clerk.

The last question arises under the 16th section of the 4th article of the constitution. "No person liable for public moneys unaccounted for, shall be eligible * * to any office of profit or trust until he shall have accounted for and paid over all the sums for which he may have been liable." It is not controverted by counsel that this section may be applied to the appointment of a clerk of the chancery court by the chancellor. The allegation is, that the respondent Howe did receive large sums of money as treasurer of Panola county, for which he has not accounted and paid over, but is still liable therefor. But it is said that this default must have been ascertained and fixed by the judgment of a competent court before the disability accrues. The words do not impart an artificial or precisely fixed meaning, but are used in their

ordinary and popular sense.   The "liability for the public mon-eys until accounted for and paid over," is the disqualifying fact. It is not the *act* of misappropriation or embezzlement that *ipso facto* works the disability, but rather the *fact* that the person owes public moneys for which he is liable, not having accounted for them, and paid them over at the time he entered upon the office. It is not an absolute and perpetual bar arising from the act of default, but it is a disability that may be temporary, and is re-moved so soon as the funds are accounted for and paid over.   It was designed to operate as a stimulus to honesty and an indem-nity for fidelity in handling public money.   If an officer has been entrusted with public funds, he shall not be eligible to any office of profit or trust *until* he has settled his accounts and paid over all sums for which he may have been liable.   If he is a defaulter, that shuts the door of official employment against him *until* he has relieved himself from his defalcation.

The two succeeding sections, the 17th and 18th, also declare ineligibility; but in both instances, there must have been a con-viction.   The first, of " an infamous crime; " the other, " of giv-ing or offering a bribe to secure an election or appointment."   In these instances, the " conviction " of the infamous crime, or of offering or giving the bribe, is the fact that disqualifies.   In the other, the nonaccounting for and nonpayment of the funds is the disqualifying circumstance.

In Shelby v. Alcorn, 36 Miss., 274, it was held, that sec. 26 of art. 3 of the constitution of 1832, which, for all the purposes of this application, is like sec. 38 of art. 4 of the present constitu-tion, operated of its own force to make void the appointment of a member of the legislature to an office created during his term of service.   The text is, " No senator or representative, during the term for which he was elected, shall be appointed to any office which shall have been created,"  *  *  *  etc.   The inter-pretation which has been put upon words nearly identical in the case cited is, that the constitution operates a prohibition; and the

626          BRADY, Dist. Att'y, ex rel., *v.* HOWE.          [Sup. Ct.

Opinion of the court.

appointment would not confer the office.     Compare the language of that section with sec. 16 of art. 4, "No person liable for public moneys     *     *     *     shall be elected," etc.     And if it was a proper reading of the former section to hold the appointment of a senator or member of the house prohibited, the like rendering must be given to the latter.     No senator, etc., shall be "appointed," etc.     No person liable, etc., shall be "eligible."     In both instances, the diqualification is, to take and hold.     So the 3d sec. of art 12, operates of it own force, a disqualification.     "No person who denies the existence of a Supreme Being shall hold any office in this state.

But it is insisted by counsel that the constitution means, that the matter, to wit: The liability for the public moneys must first be judicially determined before the disability attaches.     What shall be the character of such proceeding?     Shall it be a suit on the bond, as county treasurer, or other form of civil action?     Suppose that a recovery had been had against Howe, in a civil suit, six months prior to November, 1872, and the day before he was appointed clerk he had paid the judgment, plainly he would have been eligible to the office of chancery clerk, for he had accounted for and paid over the funds for which he had been liable.

Shall the proceeding be by indictment.     The 26th section of the 6th article makes clerks, sheriffs and other county officers subject to indictment     *     *     for willful neglect of duty or misdemeanor in office, and upon conviction shall be removed from office.     Suppose that Howe, whilst county treasurer, had been indicted, convicted and removed from *that* office, for a failure to account for and pay over the money, would the record of that conviction be evidence that he had not accounted for and paid over the money, when he was appointed clerk?     If such evidence tended to prove his default, certainly the respondent could overcome it, if the truth were so by testimony, that after the conviction, and before the appointment, he had paid over the funds. These hypotheses serve to illustrate the true reading of the consti-

tution, that the ineligibility is because the appointee, at the time he takes office, *detains* funds, for which he does not account and pay as required by law. The establishment of his "liability" by suit or indictment at some time prior thereto, does not *prove* that at the date of his appointment he was still derelict.

The infirmity in the argument of counsel is in construing the 16th section as of the same import as the 17th and 18th of the 4th article.    These latter sections impose a *perpetual* ineligibility (not upon those who may have committed bribery, perjury    *    * or other infamous crime), but upon those who have been *convicted* of any of these crimes.    There must be trial and conviction by a competent court.

Two inquiries are involved in settling the questions of ineligibility :  First, is the respondent liable for the public money ?   Second, does that liability extend down (no matter when it originated) to the time of the appointment, or has it been discharged by a proper accounting and payment.    For the ineligibility is removed the moment the delinquency ceases. These inquiries can be as fully and as thoroughly made in this proceeding, as in any form of civil action or as in the trial of an indictment.    The defendant shall appear and answer such information in the usual way, and issue being joined, it shall be tried in the ordinary way.   Code, § 1496.   Such is the statute.   The issue may be tried by a jury.

The case comes within the classification given in section 741, Ang. & Am. on Corp.   Where the incumbent is assailed for various disqualifications, such as the want of proper age, residence, or whether the office is compatible with another subsequently accepted ; or whatever other matter makes the incumbent ineligible, or forfeits the right to hold the office; in principle it is much like the case of Commonwealth v. Allen, 70 Penn., 471.   The statute of Pennsylvania forbids a councilman from being the surety of the treasurer of the town.   Allen was proceeded against by *quo warranto*, to oust him from his office of councilman, because he had become the surety of the treasurer.   The statute also made the

act a misdemeanor, and on conviction the party could be fined not exceeding $500. The objection was urged (as in this case), that there must be in an independent suit, a judicial ascertainment of the illegal act, as by conviction of the misdemeanor. But the court held that the act of becoming security for the treasurer was forbidden, and worked a forfeiture of the office. Say the court, " Forfeiture arises in the unlawful relation, not upon conviction for the misdemeanor. The consequence of the conviction is the fine, but this does not enforce the forfeiture. The *quo warranto* is to enquire, not into the misdemeanor, but into the rights of the member to continue in office."

For the misdemeanor in the office of treasurer, the respondent might have been indicted, and punished as provided in section 2890 of the Code.

This proceeding is not designed or adopted to inquire into, much less punish the misdemeanor, but to determine the right of the respondent to the office, by reason of the alleged ineligibility thereto.

We are of opinion, therefore, that the demurrer to the second specification of the information ought to have been overruled; rendering such judgment as the circuit court ought to have rendered. The demurrer is overruled, and cause remanded for further proceedings.