THE STATE OF KANSAS, *ex rel. A. H. Vance,* County Attorney of Shawnee County, v. J. C. WILSON.

1. QUO WARRANTO; *Supreme Court.* "Original jurisdiction in proceedings in *quo warranto*" is conferred upon the supreme court by the constitution of the state. (Const., art. 3, § 3.)

2. ———— This jurisdiction so conferred is just what was understood to be *quo warranto* jurisdiction at the time when the constitution was adopted.

3. ———— This jurisdiction cannot be abolished, or increased, or decreased, by the legislature.

4. JURISDICTION *in Quo Warranto; Power of Legislature.* The legislature has power indirectly to affect the exercise of this jurisdiction, as it has the power directly or indirectly to affect almost every other matter or thing coming within the purview of the constitution. It may increase, or diminish, or create, or destroy particular instances in which this jurisdiction may be exercised; but it cannot increase, or diminish, or abolish, or destroy the jurisdiction itself. Thus, it may create

additional offices or additional grounds for forfeiture, and thereby increase the number of instances in which the court may exercise its jurisdiction; or it may abolish some of the offices already existing, or some of the grounds for forfeiture already existing, and thereby diminish the number of instances in which the court may exercise its jurisdiction.

5. SUPREME COURT—*Jurisdiction in Quo Warranto.* The supreme court has ample jurisdiction to oust any person from office who is holding the same without any sufficient right thereto, and this whether the office has been usurped, or whether the incumbent's term of office has expired by lapse of time, or whether the incumbent has forfeited his right to hold the office any longer by reason of some official misconduct on his part; and it has jurisdiction to oust the incumbent from office where he is holding the same without right, although the question of his right to hold the office, or the question of forfeiture, if that is in the case, has never before been presented to any court for judicial determination. The court may determine for itself the question of right, or of forfeiture.

6. FORFEITURE OF OFFICE; *Power of Court.* But before the court can oust an officer from his office, it must be judicially determined that he has no right to hold the same; and if the alleged ground for ousting the officer is that he has forfeited his office by reason of some acts or omissions on his part, it must then be judicially determined, before the officer is ousted, that these acts or omissions of themselves work a forfeiture of the office. Mere misconduct, if it does not itself work a forfeiture, is not sufficient. The court has no power to create a forfeiture, and no power to declare a forfeiture where none already exists. The forfeiture must exist in fact before the action is commenced.

7. MAYOR OF TOPEKA; *Office Not Forfeited; Forfeiture, How Caused.* The present action is an action in the nature of *quo warranto*, commenced originally in the supreme court by the county attorney of Shawnee county, Kansas, to oust the defendant from the office of mayor of the city of Topeka, a city of the first class, on account of certain alleged acts and omissions on the part of the defendant affecting the due enforcement of the prohibitory liquor law, a certain prohibitory liquor ordinance, and certain laws and ordinances relating to liquor saloons, bawdy houses, and gambling houses. The defendant has never been tried, or convicted, or removed from his office, nor has his office been declared forfeited, because of any of these things. *Held,* That in fact the defendant has not forfeited his office under any of the statutes of Kansas, so that he may be ousted therefrom by the supreme court in the present action; and *especially held,* that he has not forfeited his office under § 11, subdivision 36, and §§ 99 and 104 of the first-class-city act, (Laws of 1881, ch. 37;) § 213, in connection with §§ 207, 208 and 209, of the act relating to crimes and punishments, (Comp. Laws

The State, *ex rel.*, v. Wilson.

of 1879, ch. 31;) and §12 of the prohibitory liquor law of 1881, (Laws of 1881, ch. 128.) Said §11, subdivision 36, simply provides for the removal of city officers by the city itself; and the defendant has not been removed under this section and subdivision, nor under any other provision of the statutes.` Said §99 does not apply under the facts of this case. Before the mayor can be held to have forfeited his office under said §§104 and 213, he must not only have committed the misconduct therein referred to, but he must also be tried before a criminal court, where he must be proved to be guilty beyond all reasonable doubt, and he must be found guilty and sentenced; and the forfeiture of his office will then follow such prosecution, trial, conviction and sentence, and *as a part of the punishment* for the misconduct of which he is found guilty. It is not merely the misconduct, however, the acts or omissions of themselves which create the forfeiture; but it is the acts or omissions, the trial, conviction and sentence before the criminal court, that work the forfeiture. What has been said with reference to §§104 and 213 will also apply to said §12; and further, said §12 does not seem to include the mayor.

8. LEGISLATIVE PROVISION *for Forfeiture.* The legislature may provide for a forfeiture of office for misconduct, independent of any criminal prosecution, or other prosecution, and the legislature often does so provide; but it has not so provided in the present case.

9. SUPREME COURT—*Ouster from Office.* If the defendant has in fact forfeited his office under any law—common law, or statutory law— he may be ousted therefrom by the supreme court in an action in the nature of *quo warranto;* or at least, if there is no other adequate remedy.

10. TERM OF OFFICE, *Fixed by Statute.* Section 78 of the first-class-city act provides that the mayor shall hold his office for two years and until his successor is elected and qualified; and several statutes provide for a termination of the office by resignation, forfeiture, removal, etc., at some earlier period of time. Now as the legislature has had the entire subject-matter of the term of office, and of the termination thereof by resignation, forfeiture, removal, etc., under consideration, it must be presumed that the legislature did not intend that there should be any other mode of forfeiture or removal than that which it has itself designated and prescribed. No mere rule of the common law, if there were any such rule, should be allowed to overturn or destroy the expressed provisions of the statute fixing the term of office; but the incumbent should be allowed to hold the office as long as he is entitled to hold the same under the statutes.

11. QUO WARRANTO; *Jurisdiction.* As a general rule, a court having the power to exercise jurisdiction in *quo warranto* proceedings will not exercise its jurisdiction where some other plain and adequate remedy exists.

12. REMOVAL FROM OFFICE; *Adequate Remedies Stated.* In the present case there are several remedies, some of which at least, are adequate: (1) there is the remedy of removal, or *amotion*, under § 11, subdivision 36, of the first-class-city act; (2) there is a remedy of removal given for certain misconduct, under § 99 of the first-class-city act, though this remedy is really not applicable to the present case; (3) there is the remedy by criminal prosecution and removal under § 104 of the first-class-city act, which remedy is applicable to the present case; (4) there is the remedy by criminal prosecution, and forfeiture, under § 213, in connection with §§ 207, 208 and 209 of the act relating to crimes and punishments, which remedy is also applicable to this case; (5) there is also the remedy of removal by an election by the people every two years; (6) and there are various other remedies for misconduct in office by fine and imprisonment under various criminal statutes of the state.

## *Original Proceedings in Quo Warranto.*

ACTION brought in this court, June 1, 1883, by *The State of Kansas*, on the relation of A. H. Vance, county attorney of the county of Shawnee, against *Joseph C. Wilson*, to oust the defendant from the office of mayor of the city of Topeka, a city of the first class. June 20, 1883, the defendant demurred to the petition and to every allegation and charge therein contained, and for causes of demurrer stated the following:

"1. The court has no jurisdiction of the person of the defendant.

"2. The court has no jurisdiction of the subject-matter of the action.

"3. The plaintiff has not the legal capacity to sue.

"4. The plaintiff, on the relation of A. H. Vance, county attorney of the county of Shawnee, has not the legal capacity to sue.

"5. There is a defect of parties plaintiff.

"6. There is a defect of parties defendant.

"7. The petition does not state facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendant."

The opinion herein, filed at the November, 1883, session of the court, contains a sufficient statement of the facts.

*A. H. Vance*, county attorney, *G. C. Clemens, A. B. Campbell*, and *Wm. Higinbotham*, for The State.

*Waters & Ensminger, J. B. Johnson, J. R. Hallowell*, and *Lucien Baker*, for the defendant.

The opinion of the court was delivered by

. VALENTINE, J.: This is an action in the nature of *quo warranto*, commenced in this court by the county attorney of Shawnee county, Kansas, to oust the defendant from the office of mayor of the city of Topeka, a city of the first class. The grounds upon which the action is founded are various alleged acts and omissions on the part of the defendant, affecting the due enforcement of the prohibitory liquor law, a certain prohibitory liquor ordinance, and certain laws and ordinances relating to liquor saloons, bawdy houses, and gambling houses. It is claimed by the plaintiff that by reason of these acts and omissions the defendant has forfeited his office.

" Original jurisdiction in proceedings in *quo warranto*" is conferred upon the supreme court by the constitution of the state. (Const., art. 3, § 3.) And this jurisdiction so conferred is just what was understood to be *quo warranto* jurisdiction at the time when the constitution was adopted. As throwing light upon the last proposition, see *Leavenworth Co. v. Miller*, 7 Kas. 502; *The State v. W. W. Rly. Co.*, 34 Wis. 197. This jurisdiction cannot be abolished, or increased, or diminished, by the legislature. (*The State v. Allen*, 5 Kas. 213; *Graham v. Cowgill*, 13 id. 114; *The State v. Graham*, 13 id. 136.) Of course the legislature has the power indirectly to affect the exercise of this jurisdiction, as it has the power directly or indirectly to affect almost every other matter or thing coming within the purview of the constitution. It may increase, or diminish, or create, or destroy any particular instances in which this jurisdiction may be exercised; but it cannot increase, or diminish, or abolish, or destroy the jurisdiction itself. ·Thus, it may create additional offices or additional grounds for for-

feiture, and thereby increase the number of instances in which the court may exercise its jurisdiction; or it may abolish some of the offices already existing, or some of the grounds for forfeiture already existing, and thereby diminish the number of instances in which the court may exercise its jurisdiction. In this way it may really create or destroy instances in which the jurisdiction may be exercised. But within these limitations whenever a proper case arises for the exercise of *quo warranto* jurisdiction, as *quo warranto* jurisdiction was understood and known at the time of the adoption of the constitution, this court may take jurisdiction of the case and determine the same, whatever may be the enactments of the legislature upon the subject.

Applying these preliminary remarks to the subject of *quo warranto* jurisdiction as it affects public offices, we would say that we think the supreme court has ample jurisdiction to oust any person from office who is holding the same without any sufficient right thereto; and this whether the office has been usurped, or whether the incumbent's term of office has expired by lapse of time, or whether the incumbent has forfeited his right to hold the office any longer by reason of some official misconduct on his part. And we think this court has jurisdiction to so oust the incumbent from office where he is holding the same without right, although the question of right to hold the office, or the question of forfeiture, if that is in the case, has never before been presented to any court for judicial determination. This court may determine the question of right or the question of forfeiture for itself. (*The State v. Allen,* ante; *The State v. Graham,* ante; *The Commonwealth v. Walter,* 83 Pa. St. 105.) But of course before this court can oust an officer from his office it must be judicially determined that he has no right to hold the same. And if the alleged ground for ousting the officer is that he has forfeited his office by reason of certain acts or omissions on his part, it must then be judicially determined, before the officer is ousted, that these acts or omissions of themselves work a forfeiture of the office. Mere misconduct, if it does

not of itself work a forfeiture, is not sufficient. (*Cleaver v. The Commonwealth*, 34 Pa. St. 283; *Brady v. Howe*, 50 Miss. 624, 625; *Lord Bruce's Case*, 2 Strange, 819; *The King v. Ponsonby*, 1 Ves. Jr. [Ch.] 1, 7; *The People v. Whitcomb*, 55 Ill. 172, 176; High on Extraordinary Legal Remedies, § 618.) The court has no power to create a forfeiture, and no power to declare a forfeiture where none already exists. The forfeiture must exist in fact before the action of *quo warranto* is commenced. (See authorities above cited, and *The State v. Hixon*, 27 Ark. 398, 402.) There may also be cases where this court would not exercise its jurisdiction, as where the question of forfeiture is at the same time being litigated in some other court of competent jurisdiction, or where some other plain and adequate remedy exists. And the court may also in some cases have a discretion as to whether it will exercise its jurisdiction, or not. We shall have more to say hereafter with reference to these questions.

In the present case it is admitted that the defendant is eligible to hold the office of mayor; that he was duly elected thereto — or rather, that he was duly reëlected thereto — in April, 1883; that he immediately- afterward qualified and took possession of the office, and is now in the full possession of and holding the same. But it is alleged that between April 10, 1883, and June 1, 1883, the time when the present action was commenced, the defendant was guilty of various acts and omissions, by reason of which he has forfeited his office. Now if it is really true that the defendant has forfeited his office, then it will be the duty of this court to oust him therefrom, or at least unless some other plain and adequate remedy exists. But the question arises: Has he forfeited his office? For as before stated, unless these acts and omissions, *ipsis factis*, create a forfeiture, this court has no jurisdiction in *quo warranto*, or in any other proceeding, to oust the defendant from his office. It makes no difference whether the defendant has done right, or wrong; for as before stated, unless his acts and omissions of themselves work a forfeiture, this court has no power to oust him. The stat-

utes of Kansas (§ 78 of the first-class-city act) provide that the mayor, police judge and councilmen "shall hold their offices for two years and until their successors are elected and qualified;" and of course they will hold their offices for that period of time, unless the offices become vacant in pursuance of some provision of law. Now there are various provisions of law with reference to vacancies occurring by reason of death, resignation, removal from the place where the office is to be held, removal from office by *amotion*, and removal from office on the ground of misconduct working a forfeiture. With reference to removal from office by *amotion*, or on the ground of misconduct working a forfeiture, counsel for the defendant cites the following statutes: section 11, subdivision 36, and §§ 99 and 104 of the first-class-city act, (Laws of 1881, ch. 37;) § 213, in connection with §§ 207, 208 and 209 of the act relating to crimes and punishments, (Comp. Laws of 1879, ch. 31;) and § 12 of the prohibitory liquor law of 1881, (Laws of 1881, ch. 128.)

Counsel for the defendant claim that all these sections apply to the mayor, as well as to other officers, except § 12. Counsel for the plaintiff admit this, except that they make the further claim that said § 11, subdivision 36, does not apply to the mayor. Now whether it does or not, we think it is clear that the defendant has not forfeited his office under it. And indeed we do not think that the defendant has forfeited his office under any of the foregoing sections, or under any other section of the laws of Kansas. Said § 99 has no application to this case, for the reason that the plaintiff is not charged with any of the wrongful acts or omissions mentioned in that section. Under said §§ 104 and 213, before the defendant can be held to have forfeited his office he must not only have committed the misconduct therein referred to, but he must also be tried before a criminal court, where he must be proved to be guilty beyond all reasonable doubt, and must be found guilty and sentenced; and the forfeiture of his office will then follow from such prosecution, trial, conviction and sentence, and as a part of the *punishment* for the misconduct of which he is

found guilty. It is not the misconduct, the acts or omissions of themselves, which create the forfeiture; but it is the acts and omissions, the trial, conviction and sentence before the criminal court, that work the forfeiture.

*Quo warranto,* as will be remembered, is, so far at least as its procedure is concerned, a civil action. (Civil Code, § 652; High on Extraordinary Legal Remedies, §§ 591, 603.) And in such action all the evidence that is required to prove any particular fact is a bare preponderance of the evidence. This is not so in a criminal action. Besides, in a criminal action, all the plea that is necessary on the part of the defendant is the oral plea, "not guilty." It is very different from this in *quo warranto* proceedings. From this it will clearly appear that the two kinds of action should not be confounded, and one used in the place of the other. If the state does not choose to prosecute the defendant criminally, it waives the forfeiture, and the incumbent continues to hold the office rightfully. And forfeiture for unimportant official wrongs is often waived. But even where the wrongs are of such magnitude that the state does not choose to waive the forfeiture for them or the prosecution for them, but prosecutes the defendant criminally for them, still his office is not in fact forfeited unless the jury trying the case can be convinced beyond a reasonable doubt that the defendant is guilty. Now there is no pretense that the defendant in the present case has ever been prosecuted or convicted for any one of the wrongs charged against him in the present case. Upon this point see *Brady v. Howe,* 50 Miss. 624, 625; *The King v. Ponsonby,* 1 Ves. Jr. (Ch.) 7, 8, and 9; *The State v. Hixon,* 27 Ark. 402.

All that we have said with respect to misconduct under §§ 104 and 213, and the forfeiture of office for such misconduct, will apply with equal force under § 12 of the prohibitory liquor law; and, in addition thereto we might also say that said § 12 does not seem to include the mayor. There is in fact no statute which provides that the mayor shall forfeit his office *ipso facto* by reason of any act or omission of his similar to those charged in the present case; but in all cases, some-

thing else must be done before the office is in fact forfeited. We think that no decision can be found holding that a forfeiture of office may be declared in a proceeding in *quo warranto* on account of some act or omission, because merely some statute provides that the office shall be forfeited *upon a conviction* of the incumbent in a criminal prosecution for such act or omission. It is certainly true, that the legislature may provide for a forfeiture of office for misconduct, independent of any criminal prosecution or other prosecution for the same. ( *The State v. Allen*, 5 Kas. 214; *The Commonwealth v. Allen*, 70 Pa. St. 465; *The People v. Heaton*, 77 N. C. 18; *The Commonwealth v. Walter*, 83 Pa. St. 105.) And the legislature often does provide for such forfeitures; but it has not done so in the present case. In the present case, the legislature has provided that the forfeiture shall follow the criminal prosecution, the conviction and the sentence; and it cannot come before.

Counsel for the plaintiff, however, claim that the defendant has forfeited his office by reason of the rules of the common law. Now we suppose that if the defendant has in fact forfeited his office under any law, whether it be under some statutory provision or under the rules of the common law, he may be ousted from his office by this court and in this kind of proceeding, or at least if there is no other adequate remedy. The defendant, however, claims that he has not forfeited his office under any law; and he further claims that in view of the statutes, he could not forfeit it under the common law. Here and upon this last proposition is where the principal difference between the counsel for the plaintiff and the defendant arises. We shall now proceed to consider this question.

Counsel for the plaintiff claim that at common law, whenever an officer was guilty of any official misconduct, he immediately forfeited his office, and that *quo warranto* would immediately lie to oust him therefrom. Now suppose that this is true: then can the common law apply to proceedings in *quo warranto* in this state, notwithstanding the statutes, notwithstanding the differences between our institutions and those of

England, and notwithstanding the differences in the tenures by which offices are held in this country and in England? But we do not think the proposition, stated as broadly as it is by counsel for plaintiff, is true. In many cases of official misconduct in England, *quo warranto* would not lie. The proceeding was largely within the judicial discretion of the court to which the application was made; and where the misconduct was unimportant or the offense trivial, or where there was some other plain and adequate remedy, the courts would seldom, if ever, entertain the jurisdiction. We shall discuss these matters, however, more in detail hereafter.

Section 78 of the first-class-city act, as before stated, says that *the mayor shall hold his office for two years, and until his successor is elected and qualified;* and certainly no rule of the common law, if there were any such rule, should be allowed to overturn and destroy this express provision of the statute. The mayor will certainly hold his office for two years, and until his successor is elected and qualified, unless some law of at least equal force with the foregoing statute can be found providing for a termination of the office at some earlier period of time. Of course all statutes *in pari materia* must be construed together, and the real law ascertained from all of them. If we should find some other statute providing for a termination of the office at some earlier period than that fixed by the foregoing statute, then we should try to give both statutes force, and should construe the law with reference to both of them. But how we could say, in the face of our own statutes and against their plain implications, if not against their express provisions, that because a person may have forfeited his office for some particular thing under the old common law, that he will still forfeit his office for a similar thing in Kansas, notwithstanding the statutes, is not quite clear. The common law is not paramount to the statutes, and it cannot overturn or destroy them. We have statutes specifically providing for the termination of the office of mayor by resignation, forfeiture, removal, etc., at an earlier period of time than that prescribed by said § 78. We have statutes relating spe-

cifically to forfeitures of the office of mayor of cities of the first class, and relating to the removal of the incumbent from such office, and why should we not resort to the procedure provided for by these statutes? It would seem that the legislature has had the entire subject-matter of the term of office, and of the termination thereof by resignation, forfeiture, removal, etc., under consideration, and is it not fair to presume that the legislature intended to cover the entire ground, and therefore that there can be no causes for forfeiture, and no removals, except such as the legislature has itself designated and prescribed?

The legislature has provided for forfeitures and removals by various sections of the statutes, as already stated. By § 11, subdivision 36, of the first-class-city act, the legislature has provided "for removing officers of the city for misconduct." There is no limitation with regard to what city officers shall be removed. The statutes seem to include the mayor as well as every other city officer, and therefore it is fair to say that it does include the mayor. But counsel for the plaintiff say that it does not, for the reason that the provision contemplates action and removal by the mayor himself. The reasoning however we think is not sound, for the reason that if the mayor were disqualified from acting on account of personal interest in the matter, the president of the council would become the acting mayor, and would perform the duties of the office for the time being. (Sec. 48 of the first-class-city act.) Besides, the statute simply provides that the mayor and council shall "provide for removing officers of the city;" and it is not absolutely necessary that they should be the tribunal themselves to remove such officers. This power of removal by the corporation itself, or by its representative officers, or by some tribunal created by them for that purpose, is generally denominated *amotion*. Judge Dillon, in his work on Municipal Corporations, § 242, (181,) expresses the opinion that the common council of a city may, in the absence of any express grant or statute conferring the power, and in the absence of any express or implied restric-

tion limiting the power, remove or expel its members, and remove corporate officers, whether they were elected by the council itself, or by the people. But counsel for plaintiff say that Judge Dillon is mistaken in this. Now for the purposes of this case, it makes no difference whether Judge Dillon is mistaken, or not; for we think the statute itself grants the power to the mayor and council to provide by ordinance for removing any officer of the city for misconduct, whatever may be the source of his right to the office, whether by election, or appointment; and whenever the mayor is disqualified from acting, the president of the council may act. Section 99 of the first-class-city act also provides for removals of the mayor and other city officers; but that section has no application to the present case. Section 104 of the first-class-city act also provides for removals of the mayor and other city officers for misconduct in office, upon conviction in any court of competent jurisdiction. And § 213, in connection with §§ 207, 208 and 209 of the act relating to crimes and punishments, provides for forfeiting the office of all officers who shall be found guilty of any official misdemeanor or misconduct in office in any court of competent jurisdiction. The procedure however to enforce the provisions of said §§ 104 and 213 is criminal in its nature, and not civil, as the procedure in *quo warranto* is. The statutes themselves expressly show this. It is possible that after a forfeiture under said § 213, *quo warranto* would lie. But there has not yet been any such forfeiture. Now after the legislature has had the entire subject-matter of forfeitures of office and removals from office under consideration, and has evidently intended to cover the entire ground, is it possible to suppose that the legislature intended that there might still be some other ground for forfeiture than those mentioned in the statutes, or some other manner of removal from office than that mentioned in the statutes? We would think not. *Expressio unius, est exclusio alterius.* We would think that the incumbent should be allowed to hold the office as long as he is entitled to hold the same under the statutes.

43—30 KAS.

It is claimed however by the plaintiff, that this interpretation of our statutes will limit the jurisdiction conferred upon the supreme court by the constitution of the state; which of course all admit cannot be done. Now, as before stated, while the legislature cannot increase or diminish the jurisdiction of the supreme court in proceedings in *quo warranto*, yet it may increase or diminish the instances in which the supreme court may exercise its jurisdiction. Suppose, for instance, that at common law, and prior to the adoption of our constitution, there had been no prohibitory liquor law; and suppose that after the adoption of the constitution a prohibitory liquor law had been passed, and that it was enacted by the legislature that any officer who should violate any of the provisions of such law should be deemed guilty of misconduct in office, and should be removed therefrom by the supreme court in an action of *quo warranto:* would this statute be unconstitutional and void because it would have the effect to increase the jurisdiction of the supreme court? We think not, for the reason that the jurisdiction would not be increased, but only additional instances would be given with reference to which the jurisdiction might be exercised. Chancellor Kent, in his Commentaries, speaking of admiralty and maritime jurisdiction under the constitution of the United States, says that "It is not in the power of congress to enlarge that jurisdiction beyond what was understood and intended by it when the constitution was adopted." (1 Kent's Com. 372.) But of course additional instances can be brought within the jurisdiction of the court. In the case supposed, the instances would be increased, but not the jurisdiction. If, however, the argument of counsel for plaintiff is sound, this would be an increase of the jurisdiction of the court; and the additional jurisdiction covering these additional instances could not be exercised. In the case supposed, after the legislature had thus increased the number of instances in which the supreme court might exercise its jurisdiction, it might then repeal the law, and thereby diminish or abolish these instances without diminishing the jurisdiction of the supreme court.

Mr. High in his work on Extraordinary Legal Remedies, lays down the doctrine that generally *quo warranto* will not lie where there is another plain and adequate remedy. (High on Extraordinary Legal Remedies, §§ 617, 616, 618, 637, 643, 645.) Counsel for plaintiff, however, claim that Mr. High is mistaken; but after a careful and pretty thorough examination of the authorities, we are convinced that his statement of the rule is substantially correct. (*The State v. Marlow*, 15 Ohio St. 114; *The State v. Taylor*, 15 id. 137; *The State v. Hixon*, 27 Ark. 398, 402; *The Commonwealth v. Leech*, 44 Pa. St. 332; *The People v. Hillsdale &c. Turnpike Co.*, 2 Johns. 190; *Neely v. Wadkins*, 1 Rich. [S. C. Law] 42; *Lord Bruce's Case*, 2 Strange, 819; *The King v. Ponsonby*, 1 Ves. Jr. [Ch.] 1, 7, 8; *The King v. Heaven*, 2 Durn. & E. 772, 776.)

In *Lord Bruce's Case*, the court says:

"If it is an actual forfeiture, he is out, and you may choose another; if not, it is but a misdemeanor, and a *quo warranto* will not lie. Besides, the modern opinion has been that a power of amotion is incident to the corporation."

In the case of *The King v. Ponsonby*, which in the lower court was a proceeding in *quo warranto* against a person holding the office of free burgess of the corporation of Newton, charging him with having usurped the office, it was held that the power of amotion had been expressly granted to the corporation; and therefore that *quo warranto* would not lie against a member until such power of amotion had been exercised. In the case of the *The King v. Heaven*, it is said by Ashurst, J.:

"Whenever a person has been once duly elected into a corporate office and forfeits it by misconduct, his amotion by the corporation is a previous and necessary step to be taken before this court will grant an information in the nature of *quo warranto* against him; for when a corporator neglects the duties of his office the corporation should first take cognizance and deprive him, and then it may be properly brought before this court."

The case was decided in accordance with this opinion.

These three English cases last cited were with reference to officers of municipal corporations. The American authorities also seem to sustain the doctrine as enunciated by Mr. High. After an examination of the authorities, we have arrived at the conclusion that, as a general rule, a court having the power to exercise jurisdiction in *quo warranto* proceedings will not exercise its jurisdiction where some other plain and adequate remedy exists. This, we think, was always the law.

Now in the present case there are several remedies, some of which at least are adequate: *First*, there is the remedy of removal or amotion, under § 11, subdivision 36, of the first-class-city act; *second*, there is a remedy of removal, given for certain misconduct, under § 99 of the first-class-city act, though this remedy is really not applicable to the present case; *third*, there is the remedy by criminal prosecution and removal, under § 104 of the first-class-city act, which remedy is applicable to this case; *fourth*, there is the remedy by criminal prosecution and forfeiture, under § 213, in connection with §§ 207, 208 and 209 of the act relating to crimes and punishments, which remedy is also applicable to this case; *fifth*, there is also a remedy of removal by an election by the people every two years; *sixth*, there are various other remedies for misconduct in office by fine and imprisonment, under various criminal statutes of the state. But if none of these remedies are sufficient, and if this court may take jurisdiction of this case notwithstanding the various statutes seemingly against it, and may oust the defendant from his office in this action, then every other officer of the state who may be guilty of misconduct in office may also be ousted from his office by this court, notwithstanding all the other remedies of ouster, and removal, and fine, and imprisonment, and notwithstanding all the various statutes of the state seemingly adverse to such a thing, and whose plain inferences and necessary implications, if not their express provisions, are clearly against the exercise of such jurisdiction. Thus, a street commissioner of Baxter Springs, or a

road overseer of Rawlins county, or a school-district director of Finney county, or a township trustee of Doniphan county, may be ousted from his office by the supreme court, notwithstanding all the laws seemingly against it, and notwithstanding the great inconveniences and difficulties that may ensue in the prosecution of parties at such great distances from their homes. It must be remembered that this court has just as much jurisdiction over the most remote part of the state as it has over the city of Topeka.

After a careful consideration of this case, we have come to the conclusion that the plaintiff's petition does not state a cause of action within the jurisdiction of this court; and therefore the demurrer to the petition will be sustained, and judgment rendered accordingly.

All the Justices concurring.