THE STATE OF KANSAS, *ex rel.* W. A. *Johnston, Attorney General,* v. JOHN FOSTER.

1. COUNTY ATTORNEY; *Forfeiture of Office.* If a county attorney neglects or refuses to perform any act which it is his duty to perform, or corruptly performs any such duty, he forfeits his office, and may be removed therefrom by a civil action, in the nature of a proceeding in *quo warranto,* in the supreme court.

2. PROHIBITORY LAW; *County Attorney; Removal from Office.* The provision in the act prohibiting the manufacture and sale of intoxicating liquors, adopted in 1881, to the effect that "If any county attorney shall fail or refuse to faithfully perform any duty imposed upon him by this act, he shall be deemed guilty of a misdemeanor, and on conviction thereof in the district court shall be fined in any sum not exceeding five hundred dollars, and on such conviction shall be deemed to be removed from office," is not the exclusive remedy for the removal from office of a county attorney who neglects or refuses to perform the duty required of him by said act, or who corruptly performs any such duty.

3. QUO WARRANTO; *Cumulative Remedy.* A civil action instituted in the manner provided in the code of civil procedure for the removal of a county attorney who neglects or refuses to perform any act which it is his duty to perform, or who corruptly performs any such duty, reaches only to the possession of his office and its emoluments. The criminal prosecution provided for in § 12 of the prohibitory act is an additional or cumulative remedy, and in addition to the forfeiture of office, subjects the guilty official, on conviction thereof in the district court, to the infliction of a fine not exceeding five hundred dollars.

4. OFFICIAL DUTY, *Failure to Perform; Public Sentiment.* Where a county attorney is charged with neglecting or refusing to perform an act which it is his duty to perform under the prohibitory law, or is charged with corruptly performing any such duty, in a civil action to remove him from office, it is not a good defense to answer that the people of his county are opposed to the prosecution of the violators of the law, and therefore, in the exercise of his official discretion, he dismissed all cases of this class brought by him.

5. PUBLIC SENTIMENT— *Law to be Enforced.* If a law enacted by the legislature has not the support of public sentiment, this may be, under some circumstances, a reason for its amendment or repeal; but in a civil action brought against a county attorney to remove him from office for neglecting to perform his duties thereunder, it is not a good defense for his refusing to attempt its enforcement.

6. ———— The charge of the supreme court delivered to the jury upon the trial of this case, referred to, and held not to be partial, misleading, or in any manner prejudicial to the rights of the defendant.

7. PROHIBITORY ACT, *Constitutional*. The provisions of the prohibitory act referred to in the charge of the court delivered to the jury upon the trial of this case, and the sections thereof commented upon in this opinion: *Held*, Not in conflict with the constitution of the United States, or the laws passed in pursuance thereof.

8. ———— The case of *The State v. Allen*, 5 Kas. 213, referred to, and followed.

9. ———— The case of *The State v. Wilson*, 30 Kas. 661, distinguished.

### *Original Proceedings in Quo Warranto.*

NOVEMBER 17, 1883, a petition was filed in this court, as follows, (title omitted,) to wit:

"1. The state of Kansas, on the relation of W. A. Johnston, attorney general, and by virtue of the authority vested in him by law, gives the court here to understand and be informed, that at the general election of the year 1882, and on the 7th day of November, 1882, said defendant, John Foster, was duly elected to the office of county attorney of Saline county, Kansas, for the term of two years, and having duly qualified, did, on the 8th day of January, 1883, enter upon the discharge of the duties of said office of county attorney; and that ever since said 8th day of January, 1883, said John Foster has been acting as county attorney of said county; that during the time said John Foster was so as aforesaid acting as county attorney of said county, and from the month of January, 1883, continuously to the present time, certain persons, to wit, Charles Holenquist, T. M. Ludes, Gustav Behr, William Sweeney and others have been engaged in said county and city of Salina, the county seat thereof, in the willful, open and notorious sale of intoxicating liquors in violation of law, and especially of the act known as the prohibitory liquor law; that each and all of said persons have kept in said city of Salina and maintained open and public liquor saloons, in which were sold various kinds of intoxicating liquors, neither of said persons having or pretending to have any right, permit, or authority to deal in or sell such liquors; that the fact of such violation of law by said above-named persons was well known by said John Foster from information received by him from others, as well as from his own personal observation and experience, he being a frequenter and patron of such illegal saloons during said time; yet the said John Foster, though well knowing that said persons were guilty of violating the provisions of said law known as the

prohibitory liquor law, and that it was his duty as such county attorney to prosecute them for such violation, 'neglected and refused so to do,' and by frequenting and patronizing their places of such illegal business, 'did encourage' them to continue to violate the law.

"2. That on the 8th day of May, 1883, the sheriff of said Saline county, having knowledge of the aforesaid violations of said prohibitory liquor law, gave notice in writing to said defendant, as required by §12 of said law, that said persons above named were selling intoxicating liquors in violation of law, and furnished him with the names of numerous witnesses, all being credible and good citizens of said city of Salina, by whom such illegal sales could be proven; and the said John Foster having inquired into the facts of such alleged violation of said law, knew that the same were true, and well knew from such inquiries, 'as well as from his own personal knowledge and experience,' that there was reasonable ground for instituting a prosecution against each of said persons for such violation of law; that said John Foster thereupon, and on the — day of May, 1883, filed complaints before a justice of the peace against said persons, charging them upon his oath as county attorney with such violation of law, but did the same corruptly, and not in good faith for the purpose of prosecuting and convicting said guilty persons; and after repeated, voluntary and inexcusable delays and continuances of all of the cases in which complaints were so filed, from the — day of May, 1883, to the 31st day of August, 1883, said John Foster not being permitted by the justice of the peace to still further delay and continue said cases without cause, did dismiss each and all of said cases without any just cause or excuse therefor, and well knowing that each of said persons was guilty as charged by him in said complaints, and that such guilt could be proven upon a trial; that the said John Foster in delaying the prosecution of said cases and dismissing the same as aforesaid was corruptly influenced in his duty as county attorney by a desire to shield and protect said guilty persons from the consequences and penalties of their crimes, to the utter disregard of the duties of his office and to the scandal of the administration of justice.

"Wherefore, said attorney general, on behalf and in the name of the state of Kansas, prays judgment that the said John Foster, by reason of his aforesaid acts, refusal to act,

and misconduct, may be adjudged and declared to have forfeited his said office of county attorney of Saline county, Kansas, and that he be ousted and removed therefrom.

W. A. JOHNSTON,

*Attorney General of the State of Kansas.*

"T. F. GARVER, *of Counsel.*"

December 10, 1883, the defendant filed the following demurrer, (title omitted,) to wit:

"The defendant demurs to the petition of the plaintiff in the above-entitled action, and to every count, allegation and charge therein contained; and for causes of demurrer states the following:

"1. That the court has no jurisdiction of the person of the defendant.

"2. That the court has no jurisdiction of the subject-matter of the action.

"3. That the plaintiff has not the legal capacity to sue.

"4. That the plaintiff, on the relation of W. A. Johnston, attorney general of the state of Kansas, has not the legal capacity to sue.

"5. That there is a defect of parties plaintiff.

"6. That there is a defect of parties defendant.

"7. That the petition does not state facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendant.

"Wherefore, the defendant asks judgment for costs.

THOMAS P. FENLON,

C. A. HILLER,

JOS. G. WATERS,

*Attorneys for Defendant.*"

January 3, 1884, the case came on for hearing, and the following order was made:

"This cause came on to be heard on the demurrer to plaintiff's petition, herein filed; and thereupon, after oral argument by J. G. Waters, T. P. Fenlon, and C. A. Hiller, attorneys for defendant, for the demurrer, and by T. F. Garver, attorney for the state, in opposition thereto, the said demurrer was submitted and taken under advisement by the court; and thereupon, after due consideration, it is ordered that the demurrer be overruled, and the defendant be allowed ten days to answer plaintiff's petition."

2—32 KAS.

Thereupon the defendant filed the following motions (title omitted):

"The defendant moves the court to require the plaintiff to make its petition more definite and certain, and especially with the matters following:

"1. That the plaintiff may be required to state the specific act or acts which it was the duty of the defendant to perform, and which he, as county attorney, neglected to perform, and that each of the same may be separately stated and numbered.

"2. That the plaintiff may be required to state the specific act or acts which it was the duty of the defendant to perform, and which he, as county attorney, refused to perform, and that each of the same may be separately stated and numbered.

"3. That the plaintiff may be required to state the specific act or acts which it was the duty of the defendant to perform, and which he, as county attorney, corruptly or oppressively performed, and that each of the same may be separately stated and numbered.

"4. That the plaintiff may be required to state the names of the persons guilty of the violations of the so-called prohibitory law, the time when and place where said violations took place, the time when the defendant was informed of such violations, by whom, and the names of the witnesses given the defendant, by whom such violations could be proved.

"5. That the plaintiff be required to state the particular act of bad faith or corruption on the part of the defendant in the institution of the prosecutions against the violators of said law.

"6. That the plaintiff be required to state the particular act of the defendant in dismissing said prosecutions."

"And now comes the defendant and moves to strike out and from the petition filed herein as immaterial and scandalous, the allegations therein that the defendant 'well knew of the violations of law therein specified,' 'from his own personal observation and experience, he being a frequenter and patron of such illegal saloons,' and the words as follows: 'and frequenting and patronizing their places of illegal business, did encourage them therein to continue to violate the law,' as being immaterial and scandalous."

These motions came on for hearing on January 4, 1884, and thereon the following order was made:

"Now comes John Foster, the defendant herein, by his

attorneys, T. P. Fenlon, J. G. Waters, and C. A. Hiller, and presents his motion to strike out certain portions of plaintiff's petition, and his motion requiring plaintiff to make his petition more definite and certain; and thereupon, after due consideration by the court, it is ordered that said motions be overruled and denied."

January 10, 1884, the defendant filed the following answer (title omitted):

"1. The defendant, for his plea to the petition of the plaintiff herein, says he is not guilty as he is in said petition charged.

"2. The defendant, for his further answer to the petition of the plaintiff, says, for a second defense, that he denies every allegation contained in the petition not hereinafter expressly admitted.

"3. For a third defense, the defendant admits that he has been and now is the county attorney of the county of Saline, in the state of Kansas, as is alleged in said petition; but denies every allegation contained in said petition wherein he is charged, or attempted to be charged, with neglecting to perform, refusing to perform, or corruptly or oppressively performing any duty legally devolving upon him to perform as the county attorney of Saline county, but on the contrary, alleges the truth to be, that in the administration of the office of county attorney of Saline county by him, and in the performance of every duty by him, arising or growing out of the exercise of said office, he has only been actuated by an honest intention and an honest discretion, as to every matter, act, and duty, to be by him performed as such county attorney.

"4. For a fourth defense, the defendant says: That all the offenses, misdemeanors and official misconduct charged or attempted to be charged in the petition, against him as the county attorney of Saline county, are for the alleged neglect or refusal to perform, or in corruptly and oppressively performing, on his part as such county attorney, certain alleged and pretended duties, attempted to be cast upon him as such county attorney, by the following act and pretended law of the state of Kansas, and by no other statute or law of the state of Kansas, that is to say: 'An act to prohibit the manufacture and sale of intoxicating liquors, except for medical, scientific and mechanical purposes, and to regulate the manufacture and sale thereof for such excepted purposes. _Be it enacted by the_

*Legislature of the State of Kansas.'* [Here the provisions of the prohibitory law, adopted Feb. 16th, 1881, are set forth in full.] And the defendant avers that the said act and pretended law of the state of Kansas is contrary to and against the constitution of the United States of America and the laws passed in pursuance of said constitution, and at all times heretofore and now in force; that the said act and pretended law is, for the foregoing cause, null and void, and that no legal duty or requirement was, or is, cast upon the defendant as such county attorney by its terms or provisions.

"Wherefore, the defendant asks that all the matters of defense hereinbefore stated may be inquired of and heard according to the law of the land; that he may have a jury trial; and upon a final hearing may be discharged and have judgment for his costs."

February 6, 1884, the following proceedings were had:

"This cause came on to be heard upon the pleadings herein filed; and thereupon the defendant presents his motion to remove the trial of this cause to the district court of Saline county, and his motion for a jury trial if the cause is retained for trial in this court. And the plaintiff presents its motion to strike the first and fourth counts from defendant's answer; and thereupon, after oral argument on said motions by T. F. Garver for plaintiff, and by T. P. Fenlon and J. G. Waters for defendant, the said motions were submitted, and taken under advisement by the court."

February 7, 1884, the following proceedings were had:

"Now comes on for decision the motion of defendant to dismiss the cause; and thereupon it is ordered that the said motion be overruled and denied. It is further ordered, that the motion of defendant that he be allowed a jury trial in this court be assigned for further hearing and argument at 2 o'clock P. M. of this day."

February 8, 1884, the following proceedings were also had:

"Now came on for decision the motion of defendant herein, asking for a jury trial of this cause; and thereupon it is ordered that said motion be allowed and a jury trial granted, *ex gratia.* It is further ordered, that Chester Thomas, jr., of Shawnee county, Kansas, be and he is hereby appointed special marshal of this court in this case, to be in attendance upon the court during the trial, to serve all writs issued to

him, and to execute the orders of this court; and it is further ordered, that the clerk shall issue a *venire facias*, directed to the special marshal, commanding him to summon from the state at large, twenty-four jurors, having the qualifications of electors, to appear before this court for the trial of this cause, on Thursday, March 6, 1884, at 10 o'clock A. M. The *venire* shall be served and returned on or before the day therein named for the appearance of jurors, and the return of the special marshal shall contain a list of the names of the jurors summoned. It is further ordered, that the clerk shall, at the request of the parties, issue subpenas for witnesses to appear and testify before this court, but no more than four witnesses shall be subpenaed to testify on behalf of each party. It is further ordered, that N. H. Loomis, of Saline county, Kansas, be and he is hereby appointed a commissioner of this court to take testimony in this cause. The said commissioner is hereby authorized and empowered to issue subpenas for witnesses to appear before him, to issue process and compel the attendance of witnesses, and to hear and record the testimony; and is required to forthwith file his oath of office in the office of the clerk of this court, to proceed at once to the performance of the duties of his office, and on or before the first day of March, 1884, to file in the office of the clerk of this court his report of the testimony so taken. And it is further ordered, that all motions to suppress testimony, or concerning matters of practice in this case, are assigned for hearing and argument on Tuesday, March 4, 1884, at 10 o'clock A. M.

February 11, 1884, the parties entered into the following stipulation:

"It is hereby stipulated and agreed in the above-entitled case, that the commission to take testimony ordered by said court on February 8, 1884, may be issued by the clerk of said court to N. H. Loomis, Esq., of Salina, Kansas.

Salina, Feb. 9, 1884.

T. F. GARVER, *Of Counsel for Plaintiff.*
CHAS. A. HILLER, *Of Counsel for Defendant.*"

On February 16, 1884, the parties also entered into the following stipulation:

"It is hereby stipulated and agreed, that the depositions of witnesses heretofore taken in this case before J. O. Wilson, notary public, and now on file in the supreme court, may be used and read in evidence, subject to all objections for in-

competency and irrelevancy, the same as if the said testimony had been regularly taken under the commission since issued.

Salina, Feb. 15, 1884.

T. F. GARVER, *Of Counsel for State.*
CHAS. A. HILLER, *Of Counsel for Defendant.*"

March 3, 1884, the plaintiff filed the following motion:

"The state moves the court to strike out of the testimony taken by N. H. Loomis, commissioner, in this case, the foling:

"1. In the cross-examination of L. O. Wight, on pp. 148–158, everything relating to the terms and circumstances of the sale of his law office by Foster, for the reason that it is immaterial and irrelevant, and not proper cross-examination.

"2. All the testimony given by witnesses for defendant with reference to the state of feeling between Judge Prescott and John Foster, and the conduct and actions of Judge Prescott, for the reason that such testimony is not material nor relevant to any issue in the case.

"3. All the testimony given by witnesses for defendant upon the question of the professional character and reputation of John Foster, for the reason that defendant's character is not in issue in this case, and such evidence is irrelevant and immaterial.

"4. The testimony given by the witness, Frank Ferlin, on cross-examination, with reference to the professional character and reputation of John Foster, the feeling existing between Judge Prescott and John Foster, and the particular acts and conduct of Judge Prescott at any time, for the reason that such testimony was not elicited by a proper cross-examination, and the evidence is immaterial and irrelevant.

"5. The testimony of E. E. Bower concerning the city ordinances (p. 202), as incompetent and immaterial. The testimony of same witness concerning T. F. Garver's official and attempted official career (pp. 203, 204), as being immaterial and irrelevant.

"6. The testimony of T. L. Bond (pp. 209, 210) concerning the employment of counsel in this case (pp. 209, 211, 213, 214), and their action in other matters, and the candidacy of T. F. Garver for the legislature in 1882 (p. 214), as being immaterial and irrelevant.

"7. The testimony of the witnesses T. L. Bond (pp. 214, 217) and J. G. Mohler, with reference to the policy or effectiveness of prosecuting liquor cases before justices of the peace,

as being mere opinions of the witnessess, and incompetent and immaterial.

"8. The testimony of the witnesses E. L. Norton and R. H. Bishop (pp. 225–229, and 269, 270), as to the prosecution of cases before them by H. S. Cunningham in 1881, as not the best evidence, and immaterial and irrelevant.

"9. The testimony of the witness J. G. Mohler, giving an opinion upon the conduct of John Foster (p. 240), and an opinion upon the character of the duties of the county attorney (p. 242), as being incompetent and immaterial."

On March 4, 1884, the defendant filed the following motion:

"Comes now the said defendant and moves the court to strike out the following questions and answers of sundry witnesses set forth in the report of N. H. Loomis, the commissioner appointed in this cause, many of which were objected to at the time and others are objectionable because they are incompetent and irrelevant to any of the issues in this cause: On page 4, general reputation of saloons; p. 15, the same; p. 17, the same; and the same testimony is repeated by various witnesses upon the following pages: 21, 22, 25, 26, 27, 38, 39, 74, 96, 102, 103, 112, 142, 165, 174 — all of these matters tending only to show that certain places had the reputation of being saloons, and that reputation was open and notorious.

"Also, all testimony of parties who stated that they had seen the defendant in any saloons, or drinking therein, found on pages 28, 29, 59, 62, 69, 70, 71, 72, 94, 101, 110, 113, 117, 118, 125, 143, 146, 164, 165, 172, 173, 174, 177, 183, 186, 218, 220.

"Also, all testimony concerning West's saloon, the same not being specifically mentioned in the petition, page 29.

"Also, all hearsay testimony as to who was the proprietor of any saloon, pages 20, 21.

"Other hearsay testimony on sundry matters, pages 42, 44, 47, 99, 168, 218.

"Also, as to public sentiment, on pages 45, 99; and how saloons were patronized, pages 111, 158.

"Also, the questions and answers on the following pages: 59, 78, 106, 130, 145, 152, 161, 162, 168, 187."

On said March 4, 1884, the following proceedings were had:

"Now came on for hearing the motions of plaintiff and defendant to strike out certain portions of the written evi-

dence filed in this cause; and thereupon, after oral argument by T. F. Garver for plaintiff, and by T. P. Fenlon and J. G. Waters, attorneys for defendant, the said motions were submitted and taken under advisement by the court."

And on March 6, the further proceedings were had:

"Now came on for decision the motions heretofore submitted herein, to strike out portions of the testimony taken by the commissioner; and thereupon it is ordered that each of said motions be sustained in part, and overruled in part, as specified in the written order of the court on file herein."

HORTON, C. J., in deciding these motions, orally stated as follows:

"An objection has been presented by the counsel for the defendant to the introduction of any evidence under the petition. The objection is based principally upon the ground that the prohibitory law imposes new duties upon county attorneys, and that the title of that act is not broad enough to sustain the constitutionality of the sections of law by which these duties are imposed. Counsel who argue in support of this proposition lay great stress upon the many new duties which they claim are imposed by this law. Upon examination, we do not find so many new duties imposed as is suggested. Under the statute in force prior to the adoption of the prohibitory law, county attorneys were required to prosecute faithfully all criminal cases to which their attention was called, and there was a special provision in the statute requiring them, when they received information that the license laws of the state were being violated, to take effective measures for the punishment of the violators thereof. Then, there was a general provision relating to county officers, prescribing that if any county attorney neglected or refused to perform his duty, or performed his duty oppressively or corruptly, he could be removed from office by a civil action. Therefore, prior to the enactment of the prohibitory law, it was the duty of county attorneys to take effective measures for the prosecution of all violators of the license laws, and also for the prosecution of all other criminal cases. Now, the act in relation to prohibiting the sale of intoxicating liquors as a beverage, provides: 'If the county attorney of any county shall be notified by any officer or other person of any violation of any of the provisions of this act, it shall be his duty forthwith to diligently inquire into the facts of such violation, and if there is reasonable ground for insti-

tuting prosecution, it shall be the duty of such county attorney to file a complaint in writing before some court of competent jurisdiction, charging the suspected person of such offense, and shall verify such complaint by affidavit; but it shall be sufficient to state in such affidavit that he believes the facts stated in such complaint to be true.' The requiring of the county attorney to verify a complaint is a new duty imposed; but under the practice prevailing at the time of the enactment of the prohibitory law — if we may judge by the records of our own court — very many informations were verified by county attorneys, so that the legislature enacted only what had been the prevailing practice in several districts of the state before the adoption of the prohibitory law, when it imposed this new duty. We do not understand the law to require a county attorney, upon his own knowledge, to commence criminal prosecutions, but we do understand that when he has received notice from 'any officer or other person,' of the violations of the law, he shall forthwith diligently inquire into the facts of such violation, and if, upon inquiry, he ascertains that the law has been violated, he shall file a complaint as prescribed by the statute.

"So far as the sections of the act referred to are concerned, we think they are constitutional, and we also think that the title of the act is broad enough to cover all the duties imposed upon county attorneys. The act is entitled 'An act to prohibit the manufacture and sale of intoxicating liquors, except for medical, scientific and mechanical purposes, and to regulate the manufacture and sale thereof for such excepted purposes.' It is within the title, we think, to provide in the act for the punishment of the violators of its provisions, and also to embrace therein specific provisions for enforcing the law. The objection made to the introduction of any evidence must be overruled.

"Before reaching the motions relating to the evidence on file, we shall dispose of the question to which our attention has been called regarding the challenging of jurors. So far as the proceedings relating to the trial of this case are concerned, the provisions of the civil code will be followed as nearly as possible, and the challenges therein provided for will be allowed, so the jurors who have served in the district court during the past year will be subject to peremptory challenge.

"As to the instructions, they will be controlled by the provisions of the civil code and given at the time therein prescribed. A general verdict will be allowed, and the jury will be permitted to find for the plaintiff or for the defendant, as

they shall finally decide. If there are any special questions which counsel desire to submit, we are disposed to permit this to be done, as in other civil cases, but we do not think it necessary to submit numerous questions of fact; two or three on either side will be sufficient.

"Taking up the motions to strike out evidence, we may say, at this time, that it is somewhat difficult to determine with certainty the various matters presented therein, because the course of the trial may make some of the evidence, which we now think wholly incompetent, very material; but we can state our views in regard to these motions, and give some intimations that may assist counsel upon the matters presented.

"The defendant moves to strike out so much of the evidence taken on the part of the state as tends to prove by general reputation the existence of saloons in Saline county. In regard to this matter we may say, that the operation of the saloons cannot be established by general reputation, but if the existence of a saloon in Saline county is once established, evidence of general reputation may be offered for the purpose of showing whether the county attorney diligently inquired into the facts of the violation of the law, after he was notified thereof, and also his opportunities of ascertaining if the prohibitory law was openly violated in his county; but the fact of the running of a saloon in Saline county in violation of law must first be shown by other evidence. Therefore the exception will be overruled.

"A motion is also made to strike out all the testimony tending to show that parties had seen the defendant in saloons, and also had seen him drinking therein. We think it competent to introduce evidence of this kind to show that after the county attorney received notice that certain parties were violating the law, he had actual notice thereof from his own personal knowledge. This tends to show his motives in the prosecution of the cases mentioned in the petition, and may have something to do in disclosing his intent in dismissing the cases against the parties violating the law. As to the motion to strike out testimony in relation to West's saloon, upon the ground that it is not specified in the petition, we can say that this evidence will not be admitted until something is developed upon the trial which will render it material. There is also a motion to strike out the evidence regarding the public sentiment favoring the enforcement of the prohibitory law in Saline county. We do not think it competent on the part of the state or the defendant to offer evidence showing what the

sentiment of the community is in regard to the enforcement of law, and therefore that evidence is incompetent and immaterial, and will not be received.

"The county attorney within his county is an officer of the state. When the law has been violated, he is not to consult the sentiment of the county or community in which he resides, before deciding whether he shall prosecute, and after he has commenced criminal prosecutions he is not to consult the sentiment of his county whether he shall perform his duty regarding such prosecutions. It is his duty to prosecute all violators of law brought to his attention, without fear or favor, and without regard to the sentiment of the community where the violators reside. The state has adopted a certain policy looking to the inhibition of the sale of intoxicating liquors as a beverage, by the enactment of the prohibitory law, and it is the duty of county attorneys to obey that law and comply with the duties imposed thereby, whether they be pleasant or otherwise. These duties are self-imposed. No one is compelled to accept the office of county attorney. If one accepts the office, he does so voluntarily and takes it with all its burdens as well as with its benefits. The sentiment of the community is not and must not be the guide or controlling influence to a county attorney whether he will prosecute a person who is guilty of violating law. Therefore all the evidence tending to show the sentiment of Saline county upon the question of the enforcement of the prohibitory law will be stricken out.

"It is also moved to strike out so much of the evidence as tends to prove that the saloons were greatly patronized at Salina. This is overruled, for if the operation of saloons there was a matter of general publicity, the county attorney would more likely have knowledge thereof, and the proof of this fact goes to his motives in neglecting or failing to prosecute.

"On the part of the state, it is urged that the cross-examination of L. O. Wight, relating to the terms and circumstances of the sale of a law office by the defendant, is irrelevant, and not proper cross-examination. With our present knowledge of the case, we do not perceive that this evidence is competent, but we reserve our decision thereon until the case is sufficiently developed for us to understand what relation it has to the issues in the case.

"Again, all the testimony given by the witnesses for the defendant with reference to the state of feeling between Judge

Prescott and the defendant, and the conduct of Judge Pres-
cott, is objected to for the reason that such testimony is not
material to any issue.   So far as we can understand the plead-
ings, it does not appear that any of the prosecutions mentioned
in the petition were brought in the district court over which
Judge Prescott presided.   Until there is evidence connecting
that court with the cases mentioned in the petition, this evi-
dence is wholly incompetent.   The county attorney cannot
excuse himself for refusing to prosecute violators of the law
upon the ground that the district judge is at enmity with
him; at least, he cannot do so until he attempts to prosecute
cases in the court presided over by such judge; but if it
turns out that the cases mentioned in the petition were dis-
missed before the justice and afterward commenced by the
defendant in the district court of Saline county, then another
question will be presented.   Until it is proved, however, that
these cases were prosecuted or attempted to be prosecuted in
some district court of which Prescott was the judge, the evi-
dence must be regarded as irrelevant.

"We also strike out all the testimony given by the wit-
nesses for the defendant upon the question of his professional
character and reputation, for the reason that such evidence is
irrelevant under the decision of this court in *Simpson v. West-
enberger*, 28 Kas. 756.   There is scarcely an action brought
in court where the defendant is charged with wrong-doing, or
with acts that would disgrace or degrade him, but that evi-
dence of this character would be competent if a different
ruling prevailed; and, therefore, in civil cases the general
reputation of a defendant is not to be investigated, as the jury
ought not to be distracted by issues outside of the case.

"The testimony given by Frank Ferlin, on cross-examina-
tion, with reference to the professional character and reputa-
tion of the defendant, the feeling existing between Judge
Prescott and the defendant, and the particular acts of Judge
Prescott, will also be stricken out, for the reason that such
testimony was not elicited by proper cross-examination, and
because we regard such evidence as irrelevant.

"The testimony of E. E. Bower, concerning the city
ordinances, is incompetent and immaterial, as is also the testi-
mony of the same witness concerning T. F. Garver's official
or attempted official conduct.   If Mr. Garver is a witness, he
may, perhaps, be examined upon these matters, but in the
present condition of the case such evidence is immaterial.

"The testimony of T. L. Bond, concerning the employment

of counsel in this case, and their conduct in other matters, and the candidacy of T. F. Garver for the legislature in 1882, is also irrelevant, and cannot be introduced.

"The testimony of the witnesses T. L. Bond and J. G. Mohler, with reference to the policy of prosecuting violators of the prohibitory law before justices of the peace, is incompetent and immaterial, as being merely their opinions. These witnesses can state any facts that occurred in the trial of the cases mentioned in the petition, before the justice of the peace, but they will not be permitted to give merely opinions.

"The testimony of the witnesses E. L. Norton and R. H. Bishop, as to the prosecution of cases before them by H. S. Cunningham in 1881, must be stricken out, as it is not the best evidence, and at present we deem it immaterial. This evidence concerns prior criminal prosecutions before the defendant entered upon the discharge of his duties as county attorney. Whether Cunningham performed his duty or not is not a question to be investigated at this time.

"The testimony of J. G. Mohler, giving his opinion upon the conduct of John Foster, and upon the duties of county attorney, is also incompetent. Therefore all the testimony of Mr. Mohler will be stricken out, except that which tends to prove what occurred during the trial of the cases mentioned in the petition."

March 6, 1884, this cause came on to be heard, and the following specific admissions were then made by the defendant:

"It is admitted on the trial of this case—

"*First*, That defendant was county attorney of Saline county, as alleged in the petition.

"*Second*, That the persons named in the petition were guilty of violating the prohibitory law, as stated in the petition.

"*Third*, That John Foster was notified of such facts, and knew the same of his own personal knowledge.

"*Fourth*, That after said notification, he filed complaints against said parties for such offenses before the justice named in the petition.

"*Fifth*, That said cases were continued from time to time by the consent of counsel on both sides.

"*Sixth*, That said cases were dismissed by the justice of the peace by the consent of this defendant, upon the payment of all costs by the defendants."

Thereupon appeared thirty-six men, summoned from the

body of the state to act as jurors in this cause, from which number the following named twelve men were duly impaneled, examined and sworn as the jury to try the issues joined in this case, viz.: Scott Kelsey, L. T. Yount, George Ludington, Alfred Pratt, John M. Wilkerson, W. D. Alexander, O. C. Skinner, Peter Fleck, A. A. Disney, J. S. Jordan, J. E. Guild, John Whitlow. After the statement to the jury of the matters involved in the case, by E. A. Austin for the plaintiff and by T. P. Fenlon for defendant, the hearing of the case was continued till 2 o'clock P. M. of the 6th day of March, 1884.

At the hour aforesaid, this cause came on to be further heard, and after the introduction of a part of the evidence, both oral and written, the further hearing thereof was continued until March 7, 1884, at 10 o'clock A. M. At the hour aforesaid, this cause came on to be further heard, and the introduction of evidence was continued until 12 o'clock M., when the further hearing was adjourned until 2 o'clock P. M. of said day. At the hour aforesaid, this cause came on for further hearing. When the introduction of evidence by both parties was concluded, the court thereupon instructed the jury in the law governing the case. The charge of the court was delivered by HORTON, C. J., and is as follows:

"GENTLEMEN OF THE JURY: The defendant, John Foster, on the 8th day of January, 1883, entered upon the discharge of the duties of the office of county attorney of Saline county, in this state, and has ever since been and now is the county attorney of that county. This action, in which you are impaneled as jurors, has been brought in this court by the state of Kansas, on the relation of W. A. Johnston, the attorney general, to remove him from that office. The statute provides when any county attorney shall neglect or refuse to perform any act which it is his duty to perform, or shall corruptly or oppressively perform any such duty, he shall forfeit his office and shall be removed therefrom by civil action. This case, therefore, is not a criminal proceeding, and this action is not brought to punish the defendant criminally, but to vacate an office which the state alleges he has forfeited by a failure to discharge its duties.

"The consequences of a finding or verdict against him reach to the possession of the office and its emoluments. The statute relating to county officers prescribes, among other things, that 'it shall be the duty of the county attorney to appear in the several courts of their respective counties, and prosecute or defend, on behalf of the people, all suits, applications or motions, civil or criminal, arising under the laws of this state, in which the state or their county is a party or interested.'

"The act prohibiting the manufacture and sale of intoxicating liquors, adopted by the legislature of 1881, prescribes that 'it shall be the duty of sheriffs, under-sheriffs, deputy sheriffs, constables, marshals, and police officers of cities or towns, having any notice or knowledge of any violation of the provisions of this act, to notify the county attorney of the fact of such violation, with the names of any witnesses within his knowledge by whom such violation can be proved. . . . If the county attorney of any county shall be notified by any officer, or other person, of any violation of any of the provisions of this act, it shall be his duty forthwith to diligently inquire into the facts of such violation, and if there is reasonable ground for instituting a prosecution, it shall be the duty of such county attorney to file a complaint in writing before some court of competent jurisdiction, charging the suspected person of such offense, and shall verify such complaint by affidavit.' The provisions of that act further require county attorneys to comply therewith, to faithfully perform all the duties imposed by the act, and to prosecute any and all persons guilty of any violations of its provisions.

"Now it is charged in the petition in this case that during the time the defendant, John Foster, was acting as county attorney of the county of Saline, and from the month of January, 1883, continuously to the commencement of this action, which was on November 17, 1883, certain persons, to wit, Charles Holenquist, T. M. Ludes, Gustav Behr, and William Sweeney, have been engaged in the county of Saline and city of Salina in the willful, open, and notorious sale of intoxicating liquors in violation of the laws of the state; that the fact of such violations of law was well known by John Foster, from information received by him from others; that it was his duty, as such county attorney, to prosecute them for such violations, but that he neglected and refused so to do.

"It is further alleged in the petition, that on the 8th day of May, 1883, the sheriff of Saline county, having knowledge of

violations of the provisions of the act known as the prohibitory liquor law, gave notice in writing to the defendant, as required by § 12 of that act, that said persons were selling intoxicating liquors in violation of law, with the names of the witnesses within his knowledge by whom such violations could be proved; that the defendant, John Foster, having knowledge that there was reasonable ground for instituting prosecutions against such persons for violations of the prohibitory law, did, on the —— day of May, 1883, file complaints before a justice of the peace in Saline county against all of said persons, charging them, upon his oath as county attorney, with violations of the prohibitory law. The petition states, however, that this was not done in good faith for the purpose of prosecuting and convicting the guilty persons, but that after repeated, voluntary and inexcusable delays, and a continuance of all the cases in which complaints were so filed, from the 14th day of May, 1883, to the first day of September, 1883, he dismissed each and all of the cases without any just cause or excuse therefor, well knowing that each of said persons was guilty, as charged by him in the complaints, and that such guilt could be proved upon a trial. The petition still further charges that the said defendant, John Foster, in delaying the prosecutions of the cases, and in dismissing the same, was corruptly influenced in his duty as county attorney by a desire to shield and protect the guilty persons from the consequences and penalties of their crimes. It is admitted, in this case, that the parties named in the petition were continuously engaged in the willful and public sale of intoxicating liquors in violation of law, at the time therein stated; that complaints were filed against them by the defendant for such violations of law; and that on August 31, 1883, all of the cases against such parties were dismissed. Evidence has been introduced before you, tending to prove the various continuances of the cases commenced by the defendant, and the proceedings attending their dismissal.

"The defendant, as county attorney of Saline county, had the discretionary power within certain limits, in instituting and prosecuting criminal actions in his county; and if he honestly exercised that discretion, either in bringing the same or failing to bring the same, or in the conduct and disposition of such cases after they were brought, he cannot be removed from his office in this action. We charge you, however, that after he was notified by the sheriff of Saline county of the violations of the prohibitory law by the parties named in such notice, with the names of the witnesses by whom such violations could be

proved, it was his duty forthwith to diligently inquire into the facts of such violations, and if there was reasonable ground for instituting the prosecutions, it was his duty not only to file complaints in good faith before a justice, but it was also his duty to prosecute in good faith the persons therein named for violations of the provisions of the act.

"In this connection, we may say to you that the reasons filed by the defendant on September 1, 1883, with the justice before whom the actions had been brought, furnish no excuse or justification for the defendant to dismiss the cases in which he had filed complaints. A county attorney cannot consult or be controlled by the wish or the sentiment of the people of his county in the prosecution of the violators of any law. A county is a political division of a state, and the county attorney is within his county a representative of the state. After he has commenced prosecutions under the prohibitory act against parties guilty of the violation of the provisions of that law, and has been furnished with the names of the witnesses by whom such violations can be proved, he is not to be deterred from his duty by mere public clamor. He is to look to the statute prescribing his duties and powers as the chart for his direction and guidance, and must comply with all that it demands at the hands of its officers.

"Again, if the county attorney was served by the sheriff with the notice introduced in evidence, he had no right to refuse to prosecute the cases commenced by him merely because no one voluntarily offered himself as prosecuting witness, and he had no authority to dismiss the cases commenced by him because some person had not come forward and signed and sworn to the complaints. There has been evidence introduced in this case tending to prove the defendant visited the various saloons kept and operated by the parties mentioned in the petition, and from his own observations and experience knew all the persons charged were guilty of violations of the provisions of the prohibitory act.

"Evidence has also been introduced tending to prove no prosecutions were commenced by the defendant against any of the parties selling intoxicating liquors in Saline county in violation of law, and, also, evidence has been offered tending to prove the saloons were run and operated in that county openly and publicly. This character of evidence has been admitted to show the motives of the defendant, but not for the purpose to have you understand that it was his duty, upon his own knowledge, to commence prosecutions or file complaints.

3—32 KAS.

"It is charged in the petition, as before stated, that the county attorney, in dismissing the cases commenced by him, was corruptly influenced in his duty as county attorney by a desire to shield and protect the guilty persons from the consequences and penalty of their acts. To establish these allegations, it is not necessary for the state to show that the defendant was bribed with money or anything else to dismiss the cases. · No actual corruption by bribery need be established. If he was influenced to dismiss the cases by a desire to shield and protect the persons against whom he had filed his complaints, from punishment for their acts, your verdict should be for the state.

"If you find from the evidence that the defendant at ·the time of the dismissal had deliberately resolved not to enforce the prohibitory law in his county, and filed his motion for a dismissal of the cases for that reason, the state is entitled to a verdict against him.

"A county attorney who willfully, intentionally and deliberately neglects or refuses to perform any act imposed upon him by the prohibitory law, or by any other statute, is not entitled to continue in his office, if proper proceedings are commenced ·against him, and such willful, intentional and deliberate neglect or refusal· be established. If a county attorney is unwilling to perform the duties imposed upon him by any statute, he should voluntarily retire from his office.

"On the other hand, if, after a consideration of all the evidence in this case, you shall find that the defendant, in the exercise of his discretion, and acting in good faith, dismissed the cases commenced by him for reasonable cause, the verdict must be in his behalf. In fact, the main question in this case is, whether the defendant acted in good faith in the discharge of his duties as county attorney in the cases named in the petition. If he did not, your verdict must be against him. If he faithfully discharged his duties, the verdict must be for him. The law presumes that an officer performs his duty, and in this case the burden of proof is upon the state.

"In a criminal case, where there is reasonable doubt whether the guilt of the defendant is satisfactorily shown, it is the duty of the jury to acquit; but, as before stated, this is not a criminal action, and you are therefore to be controlled and governed, in arriving at a verdict, by the preponderance of the evidence. You are the exclusive judges of all the facts in the case, and are also to pass upon the credibility of the witnesses introduced, and the weight of the evidence presented. We declare

to you that the sections of the statute to which we have referred are constitutional and valid, and with the policy or wisdom of the statute you have, as jurors in this case, nothing to do. You accept the law as expounded to you by the court.

"Two forms of verdict will be handed you—one for the plaintiff, and one for the defendant.. When you have agreed upon your verdict, you will return to this room, and present the same to the court."

After oral argument by R. A. Lovitt, E. A. Austin and T. F. Garver, attorneys for plaintiff, and by J. G. Waters and T. P. Fenlon, attorneys for defendant, the cause was submitted to the jury; the jury retired in the custody of a sworn bailiff of this court, and after due deliberation thereon, agreed upon the following verdict, and returned the same into court:

"The State of Kansas, on the relation of the Attorney General of the State of Kansas, *Plaintiff*, v. John Foster, *Defendant.*—We, the jury in this case, find for the plaintiff.

ALFRED PRATT, *Foreman."*

Thereupon the jury was discharged from the further consideration of the case, and the defendant gave notice of a motion for a new trial.

In due time the defendant filed a motion for a new trial, as follows (court and title omitted):

"The defendant in the above-entitled action moves the court to vacate and set aside the verdict of the jury, and to grant him a new trial for each and all of the following causes, affecting materially the substantial rights of the defendant, that is to say:

"1. Irregularity in the proceedings of the court, by which the defendant was prevented from having a fair trial.

"2. Irregularity in the orders of the court, directing the impaneling of the jury, and the taking of testimony, by which the defendant was prevented from having a fair trial.

"3. That the orders of the court in striking out certain evidence for the defendant, taken by the commissioner, were erroneous.

"4. That the court erred in not admitting evidence of the defendant's good character and professional reputation.

"5. That the court erred in refusing to sustain the defend-

ant's motion to strike out certain evidence for the state taken by the commissioner.

"6. Misconduct of the jury.

"7. Misconduct of the prevailing party and the counsel of the state.

"8. Accident which ordinary prudence could not have guarded against.

"9. Surprise, which ordinary prudence could not have guarded against.

"10. That the verdict of the jury.is not sustained by sufficient evidence.

"11. That the verdict of the jury is contrary to law. .

"12. That the above action is a criminal action, and that the defendant has been denied a trial according to the known rule and course of the law; .that he has been denied a speedy public trial by an impartial jury of the county and district in which the offense is alleged to have been committed; that he has been denied a jury trial; that he has been denied challenges guaranteed to all persons charged with offenses, by the constitution and laws of the United States and the state of Kansas.

·"13. ·That he has been tried for alleged offenses under a statute of Kansas, particularly set forth in the fourth answer of defendant herein, which is repugnant to, and contrary to, the constitution and laws of the United States, and is void.

"14. That the jury has received evidence, papers and documents not authorized by the court.

"15. That the court has admitted illegal testimony.

"16. That the jury has been guilty of misconduct tending to prevent a fair and due consideration of the case.

"17. That the verdict has been decided by means other than by a fair expression of opinion on the part of all the jurors.

"18. That the court has misdirected the jury in a material matter of law, and refused to give instructions asked by defendant.

"19. That the charge of the court was calculated to and did mislead the jury.

"20. That the court failed to instruct the jury of the defendant's defense, and failed in any manner to bring to the attention of the jury that the defendant had made or set up any answer to the petition of the plaintiff, although the court had been requested to instruct generally upon the law of the case by the defendant.

"21. Newly-discovered evidence, material for the defend-

ant, which he could not, with reasonable diligence, have discovered, and procured at the trial.

"22. That the court had no jurisdiction of the action.

"23. That this action and the course of trial herein has been in defiance of the rights of the defendant given and guaranteed him by the constitution and laws of the United States.

"24. Error of law occurring at the trial and excepted to by the defendant, the party making the application for a new trial.

"The plaintiff and its attorneys will take notice that on the hearing of this motion affidavits and other evidence will be used and heard on the part of the defendant."

March 17, 1884, court met pursuant to adjournment. Present as before, except Judge BREWER. It was ordered that the hearing of the motion for a rehearing of this cause, heretofore filed herein, and assigned for hearing on this date, be continued to Monday, March 24, 1884. On the day aforesaid, came on to be heard the motion for a new trial, heretofore filed herein, and thereupon, after oral argument by J. G. Waters and by T. P. Fenlon for the motion, the further hearing and argument thereof was continued to March 25, 1884. On the day aforesaid, came on for further argument, the motion for a new trial of this cause, and thereupon, after oral argument by Thomas P. Fenlon for the motion, and by T. F. Garver, *contra*, said motion was submitted, and taken under advisement by the court.

April 1, 1884, the following proceedings were had in this cause:

"Comes now said plaintiff, the state of Kansas, by W. A. Johnston, attorney general of said state of Kansas, and by T. F. Garver, R. A. Lovitt and Edwin A. Austin, of counsel for said plaintiff, and comes also said defendant in person and by T. P. Fenlon, J. G. Waters and C. A. Hiller, his attorneys; and said cause coming on to be further heard upon the defendant's motion for a new trial of said cause, and the court being fully advised in the premises, doth *overrule* said motion, filing in writing reasons therefor, to which ruling of the court the defendant at the time excepted. And thereupon it is ordered and adjudged by the court, that said defendant,

John Foster, has forfeited the office of county attorney of Saline county, state of Kansas, and that the said John Foster, defendant herein, be and he hereby is ousted and excluded from said office, and the powers, privileges and emoluments thereof, and that said defendant pay the costs of this suit, to be taxed at $—; to which judgment of the court, the defendant at the time excepted."

The opinion of the court was delivered by

HORTON, C. J.: The defendant has filed a motion for a new trial. Various reasons are alleged. We shall refer to those discussed by counsel upon the hearing of the motion.

The provision in the act of 1881, prohibiting the manufacture and sale of intoxicating liquors, except for specific purposes, that, "If any county attorney shall fail or refuse to faithfully perform any duty imposed upon him by this act, he shall be deemed guilty of a misdemeanor, and on conviction thereof in the district court, shall be fined in any sum not exceeding five hundred dollars, and on such conviction shall be deemed to be removed from office," does not furnish the exclusive remedy for the removal of county attorneys for misconduct in office, and does not conflict with or abrogate § 180, ch. 25, page 312, Comp. Laws of 1879, which reads:

"If any board of county commissioners, or any commissioner, or any other county officer, shall neglect or refuse to perform any act which it is his duty to perform, or shall corruptly or oppressively perform any such duty, he shall forfeit his office, and shall be removed therefrom by civil action in the manner provided in the code of civil procedure."

That provision of the prohibitory law affords merely an additional or cumulative remedy. Somewhat similar provisions in regard to persons holding public offices were adopted subsequently to the enactment of § 180.

Thus:

"Every person exercising or holding any office or public trust, who shall be guilty of willful and malicious oppression, partiality, misconduct, or abuse of authority in his official capacity, or under color of his office, shall, on conviction, be punished by imprisonment in the county jail for a term not

exceeding one year, and fined not exceeding one thousand dollars."

Also:

"Every person who shall be duly convicted of any of the offenses mentioned in the preceding section, . . . shall be forever disqualified from holding any office of honor, trust or profit under the laws of this state, and from voting at any election."

Further:

"Every officer or person holding any trust or appointment, who shall be convicted of any willful misconduct or misdemeanor in office, or neglect to perform any duty enjoined on him by law, where no special provision is made for the punishment of such misdemeanor, misconduct, or negligence, shall be punished by fine not exceeding five hundred dollars, or by imprisonment in the county jail not exceeding one year, or by both such fine and imprisonment."

This is supplemented as follows:

"Every officer who shall be convicted of any official misdemeanor or misconduct in office, or who shall be convicted of any offense which by this or any other statute is punishable by disqualification to hold office, shall, in addition to the other punishments prescribed for such offenses, forfeit his office." (Comp. Laws of 1879, ch. 31, §§ 207, 209, 212, 213.)

It has never been claimed, and cannot be claimed, with reason, that these sections, enacted subsequently to the statute relating to counties and county officers, were intended by the legislature to be the exclusive remedy for the removal of county officials guilty of misconduct, or were adopted as a substitute for said § 180. The latter section provides for a civil action, reaching only to the possession of the office and its emoluments; the other sections provide for criminal proceedings which, in addition to the forfeiture of the office, subject the guilty official to the infliction of a fine or imprisonment in the county jail, or to both fine and imprisonment. If a county attorney is removed from office by a civil action for the forfeiture of his office on account of his misconduct, he is not thereby relieved from criminal prosecution. The removal of the defendant by the proceedings commenced

against him in this court will not render him less·amenable to prosecution for his official misconduct in the district court of his county.    That the legislature did not intend a criminal prosecution to be the exclusive remedy against a county attorney who fails or refuses to perform the duties imposed upon him by the prohibitory law, is apparent, because it is expressly provided therein that—

"It shall be the duty of the county attorney, under penalty of forfeiture of his office, to prosecute any and all persons guilty of any violation of the provisions of this act."

This is a separate and independent clause from the provision relating to the trial and conviction of an unfaithful county attorney by a criminal prosecution in the district court of his county, and is in harmony with said § 180.

Counsel refer to *The State v. Wilson*, 30 Kas. 661, as decisive that the declaration of the forfeiture of the office ·of county attorney can only follow his conviction and sentence in the district court of his county.    Counsel, in their reference and argument, are in error.    In the case to which we are referred, the action was brought to oust a defendant from the office of mayor of a city of the first class.    Said § 180, and the provision last quoted from the prohibitory act, have no application to city officials.    It was expressly decided in the case cited, that the legislature may provide for the forfeiture of office for misconduct, independent of any criminal action, but that the statute relating to cities made no provision that a mayor shall forfeit his office *ipso facto* by reason of any act or omission of the character of those charges in the case then before the court.    The most that can be urged upon this point of the effect of the decision in the case of *The State v. Wilson*, supra, is that the legislature by enacting in the prohibitory law a special provision that a county attorney, who fails or refuses to perform his duty, shall be guilty of a misdemeanor, and prosecuted in the district court of his county, intended thereby to cover the entire ground of criminal prosecutions against a county attorney who fails to comply with the duties imposed upon him by that law, and to this extent supplanted

the provisions of the crimes act providing for criminal prosecutions for official misconduct.    In the Wilson case, the removal was denied, because the statute failed to declare a forfeiture for the misconduct complained of; therefore, that case is not conclusive in this, as the statute expressly provides for a forfeiture of the office of county attorney for the misconduct alleged in the petition.

It was insisted in the preliminary motions prior to the impaneling of the jury, also upon the trial, and it is again insisted, that this proceeding is a criminal one, and if not in form a criminal prosecution, that at least it is in substance a criminal one, whatever the procedure may be.    Not so.    This is not an action to recover a fine or penalty, as was the case of *Sanders v. A. T. & S. F. Rld. Co.*, instituted in the district court of Lyon county. (22 Kas. 1.)    It is not an action for which any punishment by imprisonment or fine may be inflicted upon the defendant.    It is not an action for punishment at all.    The purpose of the proceeding is to remove the defendant from office, and this may be done by a civil action in the manner provided in the code of civil procedure. (Comp. Laws of 1879, ch. 25, p. 312, § 219, [§180]; *The State v. Allen,* 5 Kas. 213.) Notwithstanding this proceeding and the result attending it, the defendant may be prosecuted in his county for his failure and refusal to faithfully perform the duties imposed upon him by the prohibitory act, and if convicted, may be fined in any sum not exceeding $500.    In such an action, he could not plead this proceeding in bar; and in this proceeding he cannot defend on the ground that as the statute makes his misconduct in office a misdemeanor, he cannot be ousted by a civil action.

The objections made to the charge of the court are threefold. Of these in their order.    The following language thereof is criticised:

"A county attorney cannot be controlled by the wish or sentiment of the people of his county in the prosecution of the violators of any law.    A county is a political division of the state, and the county attorney within his county is a representative of the state.    After he has commenced prosecutions under the prohibitory act against parties guilty of the violation of the

provisions of that law, and has been furnished with the names of witnesses by whom the violations can be proved, he is not to be deterred from his duty by mere public clamor."

A careful consideration of the arguments presented convinces us that this instruction is not erroneous. A county attorney, before entering upon the duties of his office, must take and subscribe an oath that "he will support the constitution of the United States and the constitution of the state of Kansas, and faithfully discharge the duties of his office." After the utterance of this oath, he cannot sit down with folded hands and refuse to perform the duties imposed upon him, solely upon the ground that the sentiment of the community or county in which he resides is in opposition to the enforcement of the criminal laws of the state. Such action on his part would tend to increase lawlessness. Under such a doctrine, the more lawless the community, the less the criminal prosecutions. Such action would be a temptation for malefactors to create sentiment against the criminal laws, and to a great degree the law-loving and law-abiding citizens would be at the mercy of the vicious and criminal classes. The state owes the duty to its citizens to protect them in the full enjoyment of all their rights, and if the lawless element of any community or county happens, for the time being, to be in the majority, the orderly, peaceable and quiet citizens ought not to be subjected to their domination. The laws of the state ought not to be suspended at the will of any class, much less of a class who flagrantly avow their determination to defy law.

The county attorney within his county, to a certain extent, is a representative of the state. He is to prosecute in his county for the state. He is the officer upon whom the state relies for the prosecution of all criminal offenses within his jurisdiction. If he fails or refuses to act, the law is voiceless and powerless. It is paralyzed. It protects no one needing protection; it punishes no one deserving punishment. If a county attorney vigilantly and earnestly discharges his duty by frequent prosecutions in a community seemingly indifferent to the enforcement of law, his action will of necessity call

the attention of the public to the disregard of law and the dangerous consequences following therefrom; his action will oftentimes awaken a community to a just realization of its duty, and arouse its members from indifference to a willing obedience to all that the law demands; his action will often-times result in enlightening public sentiment and in crystal-izing public opinion in favor of the enforcement of all the laws. If a county attorney may willfully refuse to act in one particular class of criminal offenses on account of the op-position to be expected from the sentiment of the community in which he resides, he may refuse, for like cause, to act in all classes of criminal offenses. Thus, if he has the discretion to say he will not attempt to enforce the prohibitory law in his county, he has also the discretion to refuse to enforce the statute relating to murder, larceny, forgery, and the other crimes. It cannot be that a county attorney has such discre-tion or power. If it were so decided,

> "'Twill be recorded for a precedent;
> And many an error, by the same example,
>   Will rush into the state."

If a law enacted by the legislature has not the support of public sentiment, this may be, under some circumstances, a reason for its amendment or repeal, but it is not a good de-fense for a county attorney, upon whose lips is fresh the oath of office, for refusing to attempt its enforcement.

It is claimed that the court failed to charge the jury of the defense set forth by the defendant, and also failed to bring to the attention of the jury that the defendant had made or set up any answer to the petition filed against him. After the impaneling of the jury, the defendant filed the following written admissions:

"*First*, That the defendant is county attorney of Saline county, as alleged in the petition.

"*Second*, That the persons named in the petition were guilty of violating the prohibitory law, as stated therein.

"*Third*, That the defendant was notified of such facts, and knew the same of his own personal knowledge.

"*Fourth*, That after the notification, he filed complaints

against these parties, for such offenses, before the justice of the peace named in the petition.

"*Fifth,* That said cases were continued from time to time, with the consent of counsel on both sides.

"*Sixth,* That said cases were dismissed by the justice of the peace, with the consent of this defendant, upon the payment of all costs by the defendants."

These admissions rendered it unnecessary to refer to the answer of the defendant, as they changed the issues made up by the pleadings. By the admissions, the issues in the case were narrowed to the question of the conduct of the defendant in prosecuting and dismissing the criminal cases commenced by him; thereafter, it was only necessary for the state to prove that he acted corruptly or with bad motives, to make out its case. After such admissions, the state was called upon only to establish by the preponderance of the evidence that the continuances of the cases from May 14, 1883, to the 1st of September, 1883, were inexcusable, and that the cases were dismissed by the defendant to shield the persons therein charged with offenses from the consequences and penalties of their acts; or that the cases were dismissed by him because he had deliberately resolved not to enforce the prohibitory law in his county, or prosecute the violators thereof. The reading of the answer to the jury, in view of the admissions, would have misled them and called their attention to issues not before them for consideration.

It is further claimed that the charge of the court did not refer to the evidence given by the defendant and in his behalf concerning the reasons for the various continuances of the criminal cases brought by him and the grounds for their dismissal. On the day that the cases were dismissed before the justice of the peace, the defendant filed in writing, with the justice, the following reasons therefor:

"*First.* I believe from the information I have received from all parts of the county that it is not the wish of the people to have this class of cases prosecuted at this time. Their reasons are: the expense that will be incurred upon the county, the uncertainty of conviction in some instances, and the bad feeling and trouble each prosecution will bring, etc.

"*Second.* The sentiment, as I now learn it, seems to have been the feeling of the people at the last general election.

"*Third.* No person has come to me, and in earnest requested me, as county attorney, to attempt to enforce the prohibitory law in this county.

"*Fourth.* The city of Salina has ample and valid ordinances for enforcing said law, and it is the feeling of the people in the county, I believe, that Salina should attend to it, be responsible for, and pay the expenses for it — that is, the enforcement of the prohibitory law.

"*Fifth.* I believe these prosecutions to have been suggested by the sheriff of Saline county under mistake as to the sentiment of the people of the county, or for some ulterior reason, or by the mistaken advice of his friends, and not with an actual intent to enforce said law.

"*Sixth.* I ought, at least, to have the assistance of a prosecuting witness. No one has offered to be such.

"*Seventh.* I stand ready to enforce the prohibitory law, and all laws, upon any person coming forward willing to sign and swear to a complaint; that is, where the statements show that an offense has been committed."

Upon the trial, evidence was offered on the part of the defendant that the cases were continued before the justice from time to time on account of professional engagements of counsel on one side or the other, and that the cases were finally dismissed because the justice refused a continuance on August 31, 1883, to enable the defendant and the attorney opposing him in those cases to attend the following September session of this court.

We charged the jury that "evidence had been introduced before them tending to prove the various continuances of the cases commenced by the defendant, and the proceedings attending their dismissal," and stated to the jury that "the law presumes an officer performs his duty, and in this case the burden of the proof was upon the state." We declared, however, to the jury, "that the written reasons furnish no excuse or justification for the defendant in this action — of ouster against him — for dismissing the cases." We are fully satisfied with this declaration. The written reasons show

. upon their face that the defendant was not favorable to the enforcement of the prohibitory law in his county, and that he attempted, by the filing of the paper containing his reasons for dismissing the cases, to excuse himself for the non-performance of his duties upon his belief that it was not the wish of the people to have that class of cases prosecuted. Further than this, in his reasons he unnecessarily and improperly censured the sheriff of Saline county for the performance of an official duty.

We submitted to the jury, in the language of the charge, the question whether the defendant was acting in good faith in the prosecution and dismissal of the cases. The evidence *pro* and *con* upon the question of the conduct of the defendant, and the motives by which he was actuated, was fully and elaborately discussed before the jury. The counsel were given wide latitude in their arguments, and upon the part of the defendant, counsel earnestly and ably commented upon all the evidence tending to establish that the continuances of the cases were necessary, and that the dismissals thereof were caused by matters over which the defendant had no control. The argument to the jury on their part was that the defendant acted in all respects faithfully and honestly in the discharge of his duties. The jury were informed, "If he was influenced to dismiss the cases by a desire to shield and protect the persons against whom he had filed his complaints from punishment for their acts, their verdict should be for the state."

They were further informed, "If the defendant, at the time of the dismissal, had deliberately resolved not to enforce the prohibitory law in his county, and filed his motion for the dismissal of the cases for that reason, the state was entitled to a verdict." In behalf of the defendant, the jury were directed, "That as county attorney of Saline county, he had discretionary power, within certain limits, in instituting and prosecuting criminal actions in his county, and if he honestly exercised that discretion, either in bringing the same or failing

to bring the same, or in the conduct and disposition of the cases after they were brought, he could not be removed from his office."

The jury were further directed that, "If, after consideration of all the evidence, they should find the defendant, in the exercise of his discretion and acting in good faith, dismissed the cases commenced by him for reasonable cause, the verdict must be in his behalf; that in fact, the main question in the case for the jury to determine was, whether the defendant acted in good faith in the discharge of his duties as county attorney in the cases named in the petition. If he did not, their verdict must be against him; if he faithfully discharged his duties, the verdict must be for him."

We have considered all the exceptions taken to the charge, and find none of them tenable. Upon the evidence presented, we do not conceive the charge was partial or misleading, or in any manner prejudicial to the rights of the defendant. We do not think the instructions asked for on the part of the defendant conflicting with the law as declared in the charge, ought to have been given. We think the case was fairly submitted to the jury in such a manner as to permit them intelligently and impartially to pass upon the issue presented. It was for them to say whether the criminal cases were dismissed by the defendant from corrupt or bad motives, or whether they were dismissed on account of the reasons testified to by the defendant and his witnesses. The witnesses who testified concerning the dismissal of the cases were before the jury in person. The jury saw them, and heard them testify. It was the jury's province to determine their credibility; to believe or disbelieve them. Evidently from the verdict, the jury did not believe the defendant prosecuted the criminal cases in good faith, or that he dismissed them for any reasonable or sufficient cause. The verdict is sustained by sufficient evidence, and we cannot say that it is against the weight or preponderance of the evidence.

Something has been said that if the defendant acted from ignorance of the law, or a misconception of his duty, he ought not to be removed. In brief, that he ought not to suf-

fer for any error of judgment. It is an answer to all this, that the defendant did not claim to be ignorant of his duty. He did not base his defense upon a mistake of judgment or ignorance; he attempted to show upon the trial that the cases dismissed by him were finally disposed of for other and different reasons than those contained in his written statement filed with the justice of the peace; but, even if the defendant had made the defense contended for, it is doubtful, in a civil action of this character, whether he could resist ouster upon the ground that he mistook the law, and therefore failed or neglected to perform his official duty.

The fourth defense in the answer copies in full the act to prohibit the manufacture and sale of intoxicating liquors, except for medical, scientific and mechanical purposes, and avers that it is contrary to and against the constitution of the United States, and the laws passed in pursuance thereof. This much of the answer presented no defense whatever, and might well have been stricken from the pleading. In our opinion, there is no provision of the prohibitory act referred to in the charge, or involved in this case, violative of the constitution of the United States, or of any act of congress.

In consideration that many of the questions arising in this case have been passed upon and settled by the decision of this court in *The State v. Allen*, supra, we think it unnecessary to make further comments upon the matters submitted to us. Many of the questions of law involved in this case were decided in that case, and generally, we have applied to this case the principles of law stated therein.

The motion for a new trial will be denied, and upon the verdict of the jury, the court finds that the defendant has forfeited his office as county attorney; and it is therefore ordered that judgment be entered that he be removed therefrom.

All the Justices concurring.